## THE SPERRY & HUTCHINSON COMPANY *v.*
## DEPARTMENT OF REVENUE

Donald H. Burnett, Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland, represented plaintiff. With Mr. Burnett as associate counsel was Claus Motulsky, Casey, Lane & Mittendorf, New York.

T. W. de Looze, Chief Tax Counsel, Salem, represented defendant.

Decision for plaintiff rendered September 24, 1973.

CARLISLE B. ROBERTS, Judge.

The plaintiff has appealed from the Department of Revenue's Order No. I-71-19, imposing additional corporation excise taxes for the tax years 1961, 1963, 1964 and 1965, pursuant to ORS chs 314 and 317. The

question to be resolved is whether certain interest income received by the plaintiff from investment securities is apportionable in part to Oregon pursuant to the state's three-factor apportionment formula. Plaintiff is a New Jersey corporation with a New York business domicile. It does business in 48 states, including Oregon, selling a promotional service which utilizes trading stamps.

Plaintiff licenses supermarkets, food stores, service stations, drug and other retail stores and businesses to use its trading stamps as a method of promoting the licensee's business. The theory is that the stamps build customer loyalty to the merchant and give the customer a bonus for his patronage. Quantities of stamps are placed in the hands of the licensee at a stipulated cost to him (the plaintiff retaining title to the stamps); the stamps are given to the licensee's customers in proportion to purchases; the plaintiff guarantees to redeem the stamps in the form of cash (approximately one percent of all stamps issued) or merchandise. The customer can obtain the merchandise at one of more than 850 redemption centers located throughout the country or from one of the company's nine distribution centers (regional warehouses established to expedite distribution of merchandise). A number of redemption centers and a distribution center are located in Oregon.

The plaintiff stands ready to redeem all trading stamps it has ever issued, regardless of the length of time they have been outstanding. Fifty percent of the stamps are redeemed within one year of their issuance; 30 percent more are redeemed in the second year. For more than 40 years, the company has kept its financial records and filed its tax returns on the basis that 95 percent of all stamps issued are ultimately redeemed

and it maintains liability accounts to provide for the cost of redeeming stamps on this basis.

The plaintiff's business operation has been continuously successful. During the years in question it maintained a portfolio of investments of surplus funds, earning substantial amounts of interest (in 1961, $1,391,551; in 1963, $2,154,793; in 1964, $3,149,632; and in 1965, $4,013,000). It is the position of the defendant that a portion of this interest income is attributable to Oregon business and is subject to the corporation excise tax, ORS ch 317, a privilege tax which is measured by net income.

For many years, the plaintiff had made attractive loans to successful licensees to enable them to expand their enterprises. The interest income paid on these loans had been reported as part of the income of the stamp business for income tax purposes. In the early 1960s, the plaintiff recognized that it could improve utilization of its cash surplus in excess of operating needs by enlarging its investment program. An "acquisition department" was established to study certain corporations, chiefly home furnishing manufacturers, with a view to acquiring profitable subsidiaries by stock purchases. (A number of going concerns were thus acquired in tax years immediately following 1965.) In April 1963, an investment expert was employed to fill a newly created office of investment manager, aided by a staff of two or three assistants, with two major responsibilities. The first was the maintenance of the cash flow necessary for daily operations, placing some cash in short-term investments as a tool to maintain the needed level. (During the years here in question, these short-term investments produced, respectively, 17.4, 33.8, 42.4 and 25.4 percent of the total interest income of the portfolio.) The second duty was to study

the market for the purpose of exploiting the earning power of the surplus and investing the greater part in long-term investments.

This corporate officer soon joined similar officers of 45 other major corporations in New York City in an informal "corporate short-term investment group" which was intended to develop expertise and convenience in obtaining optimum revenue from corporate cash flow, always with the paramount requirement of easy liquidity. In the view of this group, a "short-term investment" is one which will mature or be liquidated within one year of its purchase. The testimony indicated that this one-year standard is used by many substantial companies.

The long-term investments of the plaintiff, by direction of its policy makers, are made for periods of not to exceed ten years.

Estimated bank balances and operating fund needs are determined daily. Excess cash is placed in short-term investments or such investments are liquidated to maintain the necessary cash flow. Experience enables the investor to gauge the necessary limits. The methods followed have reduced to 2½ million dollars the daily balances in checking accounts formerly in the range of 21 to 23 million dollars. In the years involved, the plaintiff has never found it necessary to invade the long-term investment portfolio for operating revenues.

The short-term investment fund is used for two other purposes, in addition to maintaining the required cash flow for operating purposes; i.e., upon the sale of a long-term investment under the company's policy of a 10-year turnover, the proceeds may be placed in a short-term investment if the investment manager's market studies indicate to him that a better overall

interest rate will be obtained if the funds are withheld from long-term investment for three to six months; the need for the second major category arises when the investment manager is advised by the acquisition department that a new acquisition is to be made involving a substantial sum. An excess amount will then be placed in short-term investments, from cash flows as far as possible and from the proceeds of matured long-term investments as necessary, in order to provide the funds for the acquisition when needed.

The court must determine whether the interest from investments is to be classified as "business income" or "nonbusiness income" by a nondomiciliary state (in this case, Oregon) and, if "business income," whether the business is unitary with or segregable from the stamp business in which Oregon is unquestionably concerned. (The investment activities of plaintiff can be properly classified as a business. *Commonwealth ex rel. Luckett v. Louisville & N.R. Co.,* 479 SW2d 15 (Ky App 1972), CCH STC Rep ¶ 250-074.)

The applicable law in effect for 1961, 1963 and 1964 tax years is found in ORS 314.280 (Oregon Laws 1963, ch 319, § 1), in subsections (1) and (2):

"(1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income

earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the commission that method will be accepted as the basis of allocation."

Detailed regulations, Regs 314.280 (1)-(A), 314.280 (1)-(B) and 314.280 (1)-(C), have been promulgated. The following excerpts appear particularly pertinent:

Reg 314.280 (1)-(A):

"If a taxpayer (a) is subject to ORS chapter 317 and carries on business both within and without this state, * * * the tax is measured by the portion of the net income properly attributable to this state. The method to be used in determining the portion of the total income that is properly allocable [apportionable] to this state depends upon the circumstances in each case, and no rule of universal application can be stated. * * * In some cases where the business has a number of wholly diverse activities, some unitary, some segregable, the facts may require the use of a method combining features of both segregation and apportionment."

Reg 314.280 (1)-(B):

"* * * Basically, if the operation of a business within Oregon is dependent on or contributes to the operation of the business outside the state, the entire operation is unitary in character, and the income from Oregon activities will be determined by the apportionment method. In all cases where the business is unitary, some type of apportionment formula will generally be employed, not separate accounting. * * *

"* * * * *

"* * * Income from intangible personal property which is not a part of or connected with the unitary business shall be assigned to the domicile of the taxpayer. Income from tangible and intangible personal property which is a part of or connected with the unitary business shall constitute apportionable income. * * *"

In 1965, in lieu of ORS 314.280, Oregon adopted the Uniform Division of Income for Tax Purposes Act, codified as ORS 314.605 to 314.670. Under that act, "business income" is apportionable to Oregon and is defined in ORS 314.610 (Oregon Laws 1965, ch 152, § 2) as follows:

"(1) 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Both parties have indicated that the 1965 provisions did not radically change Oregon's prior procedures and regulations as applicable to the facts in this case. In both statutes, the legislative intent to tax the interstate corporation only as to that income attributable to Oregon is made clear. (Many of the difficulties in making effective that intent are discussed in Peters, *The Distinction Between Business Income and Nonbusiness Income,* U of So Cal, 1973 Tax Inst 251.)

The regulations covering each of the years in question recognize that cases will be found where the business has a number of diverse activities, some unitary, some segregable, and the facts may require the use of a method combining features of both segregation

and apportionment. In Reg 314.280 (1)-(B), applicable
to the years 1961, 1963 and 1964, and in Reg 314.615-
(B), applicable to tax year 1965, the following language
is used:

> "* * * The term 'unitary business' means that
> the taxpayer to which it is applied is carrying on
> a business, the component parts of which are too
> closely connected and necessary to each other to
> justify division or separate consideration as inde-
> pendent units. Where Oregon activities are a part
> of a unitary business carried on within and with-
> out the state, the portion of the unitary income
> subject to tax in Oregon will be determined by the
> apportionment method. Where the activities car-
> ried on within the state are separate from the ac-
> tivities carried on outside of the state, the income
> subject to tax may be determined upon a separate
> accounting of the Oregon activities. Basically, if
> the operation of a business within Oregon is de-
> pendent on or contributes to the operation of the
> business outside the state, the entire operation is
> unitary in character, and income from Oregon ac-
> tivities will be determined by the apportionment
> method. * * *"

The parties hereto do not disagree with these prin-
ciples; they disagree as to their application to partic-
ular income. This case, basically, is an argument as to
the meaning of "integrated" as used in the 1965 statute
and the meaning of "the component parts of which are
too closely connected and necessary to each other to
justify division or separate consideration," found in
the two regulations quoted above.

The Oregon statutes are intended to apportion that
part of interest income of an interstate corporation
which is "attributable" to the Oregon activity. In this
particular case, it must be noted that much of the cap-
ital which was invested in income-producing intangible

property was itself once income from plaintiff's stamp business and was or could have been taxed in proportionate part by each of the states in which the plaintiff was doing business at the time, including Oregon. If all this once-taxed capital had been invested in businesses unconnected with plaintiff's stamp business and outside of Oregon, defendant would not think of attempting to trace the proceeds. If it had been used by plaintiff to purchase and operate real estate rentals in New York City, defendant would agree to the segregation of such activity. If it had been used to finance a wholly owned subsidiary corporation, organized to purchase and operate coal mines in Pennsylvania, selling all its product on the eastern seaboard, defendant would not find it unitary with the trading stamp activity.

Why, then, should a different rule follow as to the interest derived from the long-term investment portfolio of the plaintiff? Defendant asserts a line of demarcation which the court does not find tenable under the facts (possibly unusual) found in this case. In order to bring it within apportionable income, the principal which produces the income clearly must be tied to the business activity to which the taxing state is affording opportunity and protection.

Keesling and Warren, *California's Uniform Division of Income for Tax Purposes Act,* 15 UCLA L Rev 156, 164 (1967), expresses a fundamental rule:

> "It is important to note that the labels customarily given to types of income—interest, rents, royalties, capital gains—cannot be relied upon to tell us whether the income is business or non-business income. The relevant inquiry is whether the income arises in the main course of the taxpayer's trade or business. Thus, interest income from the

investment of temporarily idle funds would be non-business income, whereas interest from trade accounts receivable would be business income. * * *"

To this statement should be added that the "taxpayer's trade or business" referred to must be one that has a reasonable relationship to the taxing state because of business transacted and property located in the taxing state (recognizing as we must that a given corporation may have several "business activities" or "nonbusiness activities," with some easily separated from others and some inextricably mixed with others).

■ Defendant's principal contentions are stated as conclusions; i.e., that "the investment program is an integral part of the total financial planning and operation of the company"; and "the investments are business activities of the company." It argues that "the investment group is not a separate corporation."

It makes no difference here that the investment group is not separately incorporated (this is the area of "substance versus form"). Nor does it matter if the investment of the surplus is denominated a business activity or nonbusiness activity of the plaintiff. These expressions, too, are conclusions. The relationship of the activity to Oregon's jurisdiction must be patent or be so inextricably "mixed" with the Oregon activity that it is impossible to allocate specifically the profits earned by the processes conducted within its borders. Then the apportionment formula can resolve the tax situation on that "fair and equitable basis" required by statute. A corporation may have a number of business activities. If each were clearly segregable, there would be no problems of allocation and apportionment, but again we are dealing with questions of degree which must be resolved by courts. When an activity is

not readily segregable and it impinges on two or more states, the formulae of apportionment come into play as to that activity. Indeed, under present Oregon law, apportionment is required of multistate corporations unless that method is shown clearly to be inapplicable. *Donald M. Drake Co. v. Dept. of Rev.,* 263 Or 26, 500 P2d 1041 (1972), *aff'g* 4 OTR 552 (1971).

The court cannot agree that the whole of the investment program is integrated with the stamp business in which Oregon has a relationship. The testimony proves that the income from the substantial long-range investments is the product of capital which no longer derives benefit from Oregon and is outside its jurisdiction.

As to the long-term investment income, segregation is required as a jurisdictional matter. If plaintiff's long-term investment activity were its sole business and was carried on in accordance with the testimony presented herein, the court would conclude that Oregon could assert no nexus on which to base a tax measured by net income. *Northwestern States Portland Cement Co. v. Minn.,* 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 4 STC ¶ 200-002, 67 ALR2d 1292 (1959).

This court regards the plaintiff's long-term investment activity as a business or undertaking which, in the tax years in question, could not be linked to the Oregon activities (although allocation of at least a portion of the short-term investment income is coupled with Oregon activities). The court finds that the facts and decision in *Great Lakes Pipe Line Co. v. Commr. of Taxation,* 272 Minn 403, 138 NW2d 612, 5 STC ¶ 250-252 (1965), and *Montgomery Ward & Co., Inc. v. Commr. of Taxation,* 276 Minn 479, 151 NW2d 294, 6 STC ¶ 250-072 (1967), relied on by defendant, are

applicable to the plaintiff's short-term investment income, used to maintain the cash flow essential to its stamp business (and to pay a proportionate share of the investment management) but not to the long-term investment income, the latter not being employed in the stamp business during the years in question.

The court recognizes that ORS ch 317 imposes an excise tax which does not purport to tax any specific asset, tangible or intangible, out-of-state or in-state, or long-term or short-term income. *Cleveland-Cliffs Iron Co. v. Mich. Corp. & Sec. Comm.,* 351 Mich 652, 88 NW2d 564, 3 STC ¶ 250-461 (1958). However, the Oregon statute seeks to tax that income of the plaintiff which is properly ascribable to Oregon. In using the apportionment formula, application must be made against only that income of a unitary business as to which Oregon offers opportunity and protection, always avoiding any attempt to tax income of another activity of the plaintiff unrelated to the specific unitary business and clearly segregable from it. The testimony in the present case shows that (unlike the steel stocks in the *Cleveland-Cliffs* case, *supra*), plaintiff did not use its long-term portfolio in its stamp business as an asset for general credit purposes; that the interest income was not used as working capital; that capital gains on sales from the portfolio were not used as working capital; and that the portfolio was not used to buy business interests in furtherance of the stamp business. These long-term investments were isolated and separate from the stamp business. They were not integrated or unitary with or necessary to the stamp business. They were not dependent on any grant in Oregon's power.

It serves no purpose in this suit to argue that integration of the long-term investment activity with the

stamp business is proved by the act of plaintiff in designating its portfolio as a current asset against the current liability for stamp redemption. The evidence reveals the designation to be changeable as a matter of policy. The facts proved by a preponderance of the evidence are that truly current liabilities are being met by current assets without reference to the long-term investments and the income produced therefrom. Again, the argument must fail when measured by the substance-versus-form doctrine.

The court's conclusions do not rely on the division of excess funds into categories of long-term investments and short-term investments. The separation of the capital involved from the assets used in the stamp business and the separation from the stamp business of the income derived from this capital, as shown by the preponderance of the evidence, constitute the test. This follows the principle of the legislative provisions.

Under the facts for the tax years involved, the court holds that the defendant must exclude from Oregon taxation the interest derived from all the long-term investments. Under the same principle, it would be proper to exclude the interest derived from the short-term investment of funds, obtained from the sale of long-term investments but earmarked for reinvestment in long-term securities in an imminently favorable market. It would also exclude the income from those short-term investments paid for out of the cash flow and earmarked for acquisition of independent businesses unrelated to the plaintiff's stamp business. The remainder of the short-term investment portfolio is purely an asset whose use is integrated with plaintiff's stamp business, too closely connected and necessary to it to be segregated.

The burden is upon the plaintiff to prove what part, if any, of its short-term investment income is not apportionable under these rules. ORS 305.427. The essential testimony is not to be found in the record.

The defendant's order is remanded to the Department of Revenue for redetermination of the amount of corporation excise tax and interest owing to the State of Oregon for the years in question, in conformity with the guidelines expressed in this opinion.