# THE COCA COLA COMPANY *v.*
# DEPARTMENT OF REVENUE

John R. Hay, Davies, Biggs, Strayer, Stoel and Boley, Portland, represented plaintiff.

Theodore W. de Looze, Chief Tax Counsel, and Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered February 25, 1974.

CARLISLE B. ROBERTS, Judge.

The plaintiff corporation appeals from the Department of Revenue's Order No. I-71-23, dated September 23, 1971, assessing additional corporation excise taxes for the years 1963, 1964, 1965 and 1966.

The facts, as stated in the department's opinion and order, have been stipulated as follows: Taxpayer, a Delaware corporation with its principal office in Atlanta, Georgia, manufactures soft drink syrups for fountain and bottled use. The syrups are sold to wholesale druggists, to other independent wholesale dealers and to approximately 900 bottling plants throughout the United States. Plaintiff owns all the shares of approximately 40 of the 900 bottling plants, including Pacific Coca Cola Bottling Company (hereinafter designated Pacific), located in Portland, Oregon. Pacific is a separate corporate entity as are the other bottling plants owned by Coca Cola. Approximately ten percent of the syrup manufactured by the plaintiff is sold to its subsidiary bottling companies and approximately five percent of the plaintiff's total sales are to wholly owned bottling companies. Plaintiff owns and operates the Portland syrup plant which supplies Pacific with its

syrup. It is one of 12 in the United States preparing Coca Cola syrup, using a secret formula, as well as syrups for Fresca, Sprite, and other beverages. Sales of bottled syrup to so-called "independent bottlers" and wholly owned bottling companies are made at the same prices, which have been established by long-standing contracts. Pacific has operations both in Oregon and Washington. Its contractual agreement with plaintiff precludes it from buying syrups and bottling beverages in substantial competition with the products of the Coca Cola Company. All the bottling subsidiaries are wholly dependent upon the parent company for Coca Cola and most other syrups used by them.

Although given some degree of independence in the day-to-day management of bottling operations, all the bottling companies which are wholly owned subsidiaries, including Pacific, are subject to extensive control by the parent corporation as to the nature and quality of the product, the quality and nature of advertising, the methods of marketing, the research and development of new products, the maintenance and audit of books and records, and the geographical area to be served. The parent company maintains a specific department or division for the sole purpose of supervising the operation of the bottling subsidiaries through placement of its employees on the corporate boards of the subsidiaries and by sending specialists to aid management. Pacific's tax returns are prepared at the parent's Atlanta office.

The parent company operates in many states and has filed a unitary return in Oregon because of the presence of its Portland syrup plant. Pacific has filed a separate unitary return reflecting its bottling activities in Oregon and Washington.

The principal issue presented in the case is whether the Coca Cola Company and its wholly owned bottling subsidiary, Pacific, are each part of the same unitary operation. If the parent company and its wholly owned subsidiary are found to be a unit, a further issue is reached; viz., whether the parent's and subsidiary's income from operations must be combined to determine the income properly to be apportioned to the State of Oregon by application of the standard three-factor formula. See ORS 314.280 (1963 Replacement Part). The defendant did not require either corporation to change its method of reporting on separate returns, using unitary reporting; basically, it merely added the net income from each and applied the three-factor formula thereto.

The plaintiff alleges that the application of the defendant's apportionment method to the aggregate income of the two corporations to determine Oregon taxable income, rather than the acceptance of a separate unitary return for each corporation, results in an unfair and inaccurate reflection of net income from business done within Oregon, contrary to ORS 314.280 and 317.360 and defendant's regulations promulgated thereunder. The plaintiff further alleges that the use of the defendant's method results in the imposition of a tax on extraterritorial profits contrary to ORS 314.280 and 317.360 and the due process clause of the Fourteenth Amendment to the U. S. Constitution.

Initially, it is necessary to examine the statutory and regulatory schemes applicable to the years in question. Since the tax years under consideration are 1963 through 1966, the parties have noted that the first two taxable years are included under one statutory scheme while the latter two years are included under

a succeeding enactment. For the tax years 1963 and 1964, the applicable statute is ORS 314.280. The relevant part of the section states:

"(1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have the power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as *fairly and accurately* to reflect the net income of the business done within the state." (Emphasis supplied.)

The code section does not specifically mention the unitary concept of reporting taxable income. The Department of Revenue's regulation, Reg 314.280 (1)-(B), applicable to tax years 1963 and 1964, however, includes the definition and explanation of the unitary business. That regulation states, in relevant part, as follows:

"If the business of the taxpayer is carried on both within and without this state, and the income properly attributable to Oregon may be fairly reflected *only* by treating the business within and without the state as a unitary business, the apportionment method must be used. The term 'unitary business' means that the taxpayer to which it is applied is carrying on a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units. Where Oregon activities are a part of a unitary business carried on within and without the state, the portion of the unitary income subject to tax in Oregon will be determined by the apportionment method. * * * *In all cases where the business is unitary, some type of an apportionment formula will generally be employed,* not separate accounting. * * *

"Where two or more corporations are engaged in a unitary business, a part of which is conducted in Oregon by one or more members of the group, the commission [now the Department of Revenue] may permit or require that the Oregon net income of each corporation which is subject to the tax jurisdiction of this state be determined as follows: * * *." [The regulation then requires the application of the standard three-factor formula to the combined figures of the corporations.] (Emphasis supplied.)

As seen from the statute and regulations applicable to the 1963 and 1964 tax years, it is clear that the Department of Revenue should apply that one of the two methods which more "fairly and accurately" reflects the net income of the business done within the state.

Decisions under this prior statute have been cited by the parties and some discussion is essential. In *Utah Const. & Mining v. Tax Com.*, 255 Or 228, 231, 465 P2d 712 (1970), the Supreme Court, applying the pre-1965 statute, stated that, "regardless of whether the taxpayer is regarded as a unitary business," it was not mandatory to use the apportionment method to allocate income, under the stipulated facts in the case. The court stated that the policy reflected in the statute was to adopt a method which would "fairly and accurately" measure the net income of the business done within the state. Likewise, in *Utah Const. & Mining v. Commission*, 3 OTR 385 (1969), *aff'd, supra,* the Tax Court stated that the statutory scheme did not adopt a single system of reporting. The Tax Court held that the apportionment method did not fairly and accurately reflect the net income of plaintiff's dam construction activities in Oregon.

In *Humble Oil & Refining Co. v. Dept. of Rev.*, 4

OTR 284 (1971), the Tax Court, in a decision based on the older statute, stated that the statutory scheme did not favor either method of reporting but required use of a method that most fairly and accurately reflected the net income attributable to the state. See *Dutton Lbr. Corp. v. Tax Com.*, 228 Or 525, 531, 365 P2d 867 (1961). See also *Gen. Motors v. District of Columbia*, 380 US 553, 85 S Ct 1156, 14 L Ed2d 68, 5 CCH STC 10,059, ¶ 200-012 (1965).

In contrast to the above statute (ORS 314.280, applicable to the tax years before 1965), somewhat different language was enacted and made applicable to the tax years 1965 and following. The 1965 enactment adopted the Uniform Division of Income for Tax Purposes Act. The act provides for a three-factor apportionment formula comprised of a property factor, a payroll factor and a sales factor. The formula is similar to the apportionment factors formerly promulgated by the State Tax Commission through regulations. The primary statute, ORS 314.615, states:

"Any taxpayer having income from business activity which is taxable both within and without this state, other than activity as a financial organization or public utility or the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in ORS 314.605 to 314.675. * * *"

The Department of Revenue's regulation, Reg 314.615-(B), states, in relevant part, as follows:

"* * * Where the activities carried on within the state are separate from the activities carried on outside of the state, the income subject to tax may be determined upon a separate accounting of the Oregon activities. Basically, if the operation of a business within Oregon is *dependent on or contributes to* the operation of the business outside the

state, the *entire* operation is *unitary* in character, and the income from Oregon activities will be determined by the apportionment method. In *all cases where the business is unitary, some type of an apportionment formula will generally be employed, not separate accounting.* Even though the business is not of a unitary nature, it may be necessary to use the apportionment method if the net income of the Oregon business cannot accurately be determined from the taxpayer's records by use of the separate accounting method." (Emphasis supplied.)

The post-1965 statute and regulations reflect a different emphasis on the reporting method than did the pre-1965 code, apparently requiring that a business operating both within and without the State of Oregon *must* report on the apportionment basis unless the activities are clearly separate.

In *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 500 P2d 1041 (1972), *aff'g* 4 OTR 552 (1971), the Supreme Court presented a helpful summary of the change in the law in effect on January 1, 1965. Under ORS 314.280, effective prior to that date, discretion was given to the Department of Revenue to permit or require segregated or apportioned reporting, depending on what was thought to reflect accurately the income of a multistate business due to sources within the State of Oregon. The 1965 Uniform Act sets out and requires the use of the apportionment method, making an exception (ORS 314.670) only when one party or the other can prove the allocation provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in the state. The pre-1965 law did not endorse either method but the 1965 Act does endorse the use of allocation. In *Drake, supra,* the company alleged it *was* a unitary business and the commission denied such allegation. The Tax

Court held, with the Supreme Court affirming, that the business was unitary.

The Multistate Tax Compact has also been adopted by Oregon (Or L 1967, ch 242); however, the date of such enactment prohibits the provisions of that compact from direct application to the present case. See discussion *infra*.

This review of the changing statutory scheme during the period of taxation involved herein is believed to be justified. However, for the purpose of the decision to be rendered in this case, the statement included in the Department of Revenue's former regulation, Reg 314.280 (1)-(A), appears to remove any substantial differentiation between the two statutes. That regulation states, in part:

> "* * * In most cases the circumstances are such that the income arising from the business done in Oregon must be determined by the apportionment method (Reg. 314.280 (1)-(B)). The segregated accounting method (Reg. 314.280 (1)-(C)) is appropriate where the business or activity in and out of the state cannot be classified as unitary. * * *"

It therefore appears that although the actual statutory scheme applicable to the pre-1965 years differed in assumption from that of 1965, the application espoused by the Department of Revenue appears to be nearly identical. Therefore, the decision as to whether the two corporations involved in the present case comprise a unitary business would, prima facie, result in the same tax burden whether the tax years be 1963 and 1964 or 1965 and 1966. A further indication of the juxtaposition of the two statutory schemes is found in separate regulations. Both sets of relevant regulations contain the statement that "[i]n all cases where the business is

unitary, some type of an apportionment formula will generally be employed, not separate accounting." Reg 314.280 (1)-(B) (1964) and Reg 314.615-(B) (1965). Thus the determination of the unitary nature of the activities would place the 1963 and 1964 tax years in the same statutory position as the 1965 and 1966 tax years. These duly promulgated regulations carry the force of law and must be obeyed unless the plaintiff can prove they contain a misstatement of the relevant law or there is a misapplication by the Department of Revenue. *U.P.R.R. Co. v. Tax Commission,* 240 Or 628, 402 P2d 519 (1965).

■ The plaintiff has raised various constitutional arguments which must be considered by the court. The first of these is the allegation that the state tax is being applied extraterritorially. In *Wisconsin v. J. C. Penney Co.,* 311 US 435, 61 S Ct 246, 85 L Ed 267, 1 CCH STC 138, ¶ 250, 130 ALR 1229 (1940), the argument of extraterritorial taxation was likewise made. The U. S. Supreme Court in that opinion, at 444, stated:

> "* * * 'Taxable event,' 'jurisdiction to tax,' 'business situs,' 'extraterritoriality,' are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. * * *"

Likewise, in *Wallace v. Hines,* 253 US 66, 40 S Ct

435, 64 L Ed 782 (1920), Mr. Justice Holmes, delivering the opinion of the court, states at 69:

> "The only reason for allowing a State to look beyond its borders when it taxes the property of foreign corporations is that it may get the true value of the things within it, when they are part of an organic system of wide extent, that gives them a value above what they otherwise would possess. * * *"

The *Wallace* case, *supra,* involves a property tax situation but the principle of extraterritorial taxation similarly applies in a corporate excise tax case. See also *U. S. Express Co. v. Minnesota,* 223 US 335, 32 S Ct 211, 56 L Ed 459 (1912).

The argument of extraterritoriality has been discussed in *Developments in the Law—Federal Limitations on State Taxation of Interstate Business,* 75 Harv L Rev 953 (1962). That article, at 1010, states:

> "When the state asserts the power to tax net income on the basis of the business situs of property or business activities conducted within the state, the Court has asserted that due process requires that the income taxed must be reasonably attributable to the property or activities, that the state may not tax 'extraterritorial' values. But it is a difficult and conjectural process to assign income according to the geographical area in which it is earned. Income is the result of a *series of business activities* which may include, for example, purchasing of raw materials, manufacturing, marketing, and exercise of managerial skills; each of these activities may be carried on in different states and each may contribute to the income of the enterprise. * * *" (Emphasis supplied.)

See also *Pacific Tel. Co. v. Tax Comm'n.,* 297 US 403, 56 S Ct 522, 80 L Ed 760, 1 CCH STC 397, ¶ 504, 105 ALR 1 (1936).

Considering the argument of extraterritoriality as applied to the present case, the limits described in the U. S. Supreme Court cases cited above do not appear to have been breached. Plaintiff agrees that to measure accurately the income attributable to Oregon of each of the involved corporations, the unitary-business concept must be applied within each separate corporation. The dispute, of course, centers on the application of the unitary-business concept to the income of the two corporations in the aggregate. Therefore, the argument of extraterritorial taxation appears not to carry significant weight. In a sense, the cases discussing extraterritoriality do make provision for a measurement of the degree of state protection and aid reflected in the overall income of a corporation operating both within and without the state but, taken as a whole, the cases do not appear to differentiate to the degree necessary for application of the extraterritorial concept to this case. Once the corporation is found to be doing business both within and without a state, the contention of extraterritoriality appears to be satisfied and any difference in degree concerning the income attributable to a state should be decided by the applicable allocation formulas and not by a piecemeal application of the extraterritoriality concept. It is possible, of course, for an allocation system itself to tax extraterritorial values. See *Gen. Motors, supra.* In that case, the U. S. Supreme Court found the application of an apportionment formula employing only a sales factor was beyond the statute and did not result in a fair apportionment. This court has found no such result in the present case, based on the evidence adduced at trial.

■ The second constitutional argument presented by the plaintiff has been discussed in part in the cover-

age of extraterritoriality. The plaintiff alleges that the due process clause of the U. S. Constitution, Amend XIV, has possibly been infringed by the application of the unitary-business concept. The application of the Fourteenth Amendment to state taxation has been summarized in *Conn. General Co. v. Johnson,* 303 US 77, 58 S Ct 436, 82 L Ed 673, 1 CCH STC 209, ¶ 353 (1938). Mr. Justice Stone, delivering the majority opinion, states at 80-81:

> "But the limits of the state's legislative jurisdiction to tax, prescribed by the Fourteenth Amendment, are to be ascertained by reference to the incidence of the tax upon its objects rather than the ultimate thrust of the economic benefits and burdens of transactions within the state. As a matter of convenience and certainty, and to secure a practically just operation of the constitutional prohibition, we look to the state power to control the objects of the tax as marking the boundaries of the power to lay it. Hence it is that a state which controls the property and activities within its boundaries of a foreign corporation admitted to do business there may tax them. But the due process clause denies to the state power to tax or regulate the corporation's property and activities elsewhere. * * * It follows that such a tax, otherwise unconstitutional, is not converted into a valid exaction merely because the corporation enjoys outside the state economic benefits from transactions within it, which the state might but does not tax, or because the state might tax the transactions which the corporation carries on outside the state if it were induced to carry them on within."

Significant cases in respect to the instant situation include *Butler Bros. v. McColgan,* 315 US 501, 62 S Ct 701, 86 L Ed 991 (1942); *Hans Rees' Sons v. No. Carolina,* 283 US 123, 51 S Ct 385, 75 L Ed 879, 1 CCH STC 148, ¶ 256 (1931); and *Humble Oil & Refining Co.,*

*supra. Humble Oil* cites the *Butler Bros.* case for the proposition that the apportionment by formula of the combined net income of a multistate corporation is not a violation of the due process clause of the Fourteenth Amendment when such apportionment fairly and accurately reflects the net income of the business done within the state. The *Humble Oil* case was decided under the pre-1965 tax law but it is significant in that it states a precedent-setting opinion as to the constitutionality of the apportionment formula as applied in Oregon. It appears that the Fourteenth-Amendment argument is really an attack upon the constitutionality of the apportionment formula. Such constitutionality has already been decided by this court in the *Humble Oil* case and it is believed the reasoning reflected in that opinion still prevails.

▆▆ A final constitutional challenge which has possibly been advanced concerns the commerce clause. In *International Harvester Co. v. Evatt,* 329 US 416, 67 S Ct 444, 91 L Ed 390, 2 CCH STC 114, ¶ 200-020 (1947), the Supreme Court stated that the commerce clause does not bar a state from imposing a tax based on the value of the privilege of intrastate business merely because the company also does an interstate business. A later U. S. Supreme Court case directly in point is that of *Northwestern States Portland Cement Co. v. Minn.,* 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 4 CCH STC 10,002, ¶ 200-002, 67 ALR2d 1292 (1959). In that case, the U. S. Supreme Court, in an opinion of Mr. Justice Clark, stated that the commerce clause of the federal Constitution is not violated by state statutes levying nondiscriminatory net income taxes on that portion of a foreign corporation's net income earned from and fairly apportioned to the

business activities within the taxing state, even though these activities are exclusively in furtherance of interstate commerce. See *Ore.-Nev.-Calif. Freight v. Tax Com.*, 223 Or 314, 325, 353 P2d 541 (1960), for tests of whether the tax burdens competition with interstate commerce.

The *Northwestern States* case, *supra*, covers any allegation of unconstitutionality in relation to the commerce clause if the statutes fairly apportion the income of the business activities. Since the plaintiff has not directly raised the question of the fairness of the apportionment formula per se, but rather has attacked the application of such formula, the question of the constitutionality of the formula need not be decided by this court. Any indirect attack on the fairness of the formula is dealt with in *Humble Oil & Refining Co.*, *supra*. See also *Hans Rees' Sons, supra*.

In further reference to the commerce clause, the Oregon Supreme Court has held that the commerce clause does not prevent the application of the Oregon excise tax to plaintiff's net income calculated by the former State Tax Commission (now the Department of Revenue) by the apportionment method. *John I. Haas, Inc. v. Tax Com.*, 227 Or 170, 198, 361 P2d 820 (1961).

In general, it may be stated that the burden of proof in any proceeding before the Tax Court is on the party seeking affirmative relief. ORS 305.427.

Speaking in a more specific light, it has frequently been stated that one who attacks the application of a formula of apportionment of income has the burden of showing, by clear and cogent evidence, that the application of the formula results in the unconstitutional

taxation of extraterritorial values. *Butler Bros., supra.* See also 75 Harv L Rev, *op cit supra,* at 1014. The shouldering of the burden by the plaintiff has been frequently reiterated in apportionment tax cases by the Oregon Supreme Court. See *Zale-Salem, Inc. v. Tax Com.,* 237 Or 261, 391 P2d 601 (1964); *White Stag Mfg. Co. v. Tax Com.,* 232 Or 94, 373 P2d 999 (1962), and *Dutton Lbr. Corp., supra.* The court in each of these cases states that in the rebuttal of the presumption that the formula employed by the former Oregon State Tax Commission in determining excise taxes is fair, the burden is on the complaining taxpayer to make such result manifest by clear and cogent evidence.

It has thus been established that formerly the burden was on a plaintiff to prove by clear and convincing evidence that the apportionment formula as applied, incorporating the unitary-business concept, distorted the amount of taxable income allocable to Oregon. ORS 305.427, applicable herein, is less onerous, requiring only a preponderance of the evidence.

The test, however, of a unitary business is much more complicated. Initially, it may be said that the definition of a unitary business and the test thereof have been merged by the cases into a single concept.

In general, it need be stated that while employing an apportionment formula, application must be made against only that income of a unitary business to which Oregon offers opportunity and protection, always avoiding any attempt to tax income of another activity unrelated to the specific unitary business and clearly segregable therefrom. "Where a corporation is engaged in several projects which enable it to derive benefits from them that are not inherent in any of the

projects when standing alone, the enterprise is unitary." *Commonwealth v. The L. D. Caulk Co.,* 69 Dauph 289, 11 D&C2d 218 (Pa 1956), citing *Maxwell Comr. v. Kent-Coffey Mfg. Co.,* 204 NC 365, 168 SE 397, 90 ALR 476 (1933), *aff'd* 291 US 642, 54 S Ct 437, 78 L Ed 1040 (1934). The *Maxwell* case also stated a general principle applicable in the present situation:

"* * * That term [unitary business] is simply descriptive, and primarily means that the concern to which it is applied is carrying on one kind of business—a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units. By contrast, a dual or multiform business must show units of a substantial separateness and completeness, such as might be maintained as an *independent* business (however convenient and profitable it may be to operate them conjointly), and capable of producing a profit in and of themselves." [204 NC at 369-370, 168 SE at 399.] (Emphasis supplied.)

A further statement of the unitary concept in general is found in House Comm. on the Judiciary, Special Subcommittee Report on State Taxation of Interstate Commerce, HR Rep No 1480, 88th Cong, 2d Sess (1964). It reads in part, in Vol 1 at 167, as follows:

"A combination of the administrative and theoretical difficulties presented by separate accounting is responsible for the concept of the 'unitary business,' a concept which pervades the area of State taxation of multistate concerns. In essence, a 'unitary business' is a business for which it is felt that the separate accounting method does not reasonably reflect the income attributable to each establishment. A less conclusory statement of the concept is that a business is 'unitary' if the several business establishments of the company are *mutually dependent* upon each other for their success. State tax

administrators differ somewhat in their conclusions as to what kinds of business are unitary and what kinds are not, but it is *almost universally true* that they are *extremely reluctant* to permit the use of separate accounting in the case of a business deemed 'unitary.' " (Emphasis supplied.)

A single definition of the unitary concept has not yet been developed to the satisfaction of the majority of courts. Since the U. S. Supreme Court first approved a formula designed to apportion income to a state, *Underwood Typewriter Co. v. Chamberlain,* 254 US 113, 41 S Ct 45, 65 L Ed 165, 1 CCH STC 146, § 255 (1920), the courts have attempted to define unitary business and have not, as yet, been completely success-ful. As the Oregon Supreme Court stated in *Hines Lumber Co. v. Galloway,* 175 Or 524, 154 P2d 539 (1944), at 539:

"Every definition of the word 'unitary' must of necessity be general, and since such must be its nature, a repetition of definitions cannot be helpful in the solution of any specific problem. * * *"

In contrast to the unitary concept, the concept of separate business has been defined fairly adequately. In Keesling and Warren, *The Unitary Concept in the Allocation of Income,* 12 The Hastings LJ 42 (1960), the authors state that to apply the separate accounting method, it is necessary to determine separately the gross income attributable to the taxing state and the deductible expenses attributable to each state. The defi-nition of separate business, the authors state, is that it is conducted wholly within the particular taxing jurisdiction and that the income attributable to that jurisdiction may appropriately be determined by use of the separate accounting method without taking into account income from property or *activities* located or

carried on beyond the borders of the taxing jurisdiction. The authors continue, at 50:

> "* * * Out of the total income of a company, it is often possible to identify certain items as being attributable to a particular series or group of activities. Whenever this is possible, each group or series of activities should be considered as a separate business unit. Hence for allocation of income purposes, a given taxpayer may be engaged in the conduct of a number of different businesses notwithstanding that for other purposes it might be considered as engaged in only one business, such as the hotel business, the cotton business, etc. Furthermore, one or more of such businesses may be conducted wholly within a given taxing jurisdiction, one or more partly within and partly without * * *. In the first case, the businesses are separate and the income can be computed by the separate accounting method. In the second case the businesses are unitary and the income from each, if there is more than one, should be apportioned by the formula method. * * *"

One further general statement of the separateness of businesses is found in *Commonwealth v. The L. D. Caulk Co., supra*. In that case, the Pennsylvania court (69 Dauph at 293) stated that multiformity in business activity exists where two separate and segregated enterprises are not related to each other and are conducted as separate and independent units, and the corporation derives benefits from each independent unit that are *not related* to the operation of the other units.

To understand the unitary-business concept it is important to understand the background to the promulgation of the concept. The unitary-business concept was founded upon property tax law and was there known as the "unit rule." The unit rule was first approved by the U. S. Supreme Court in *Union Pacific*

*Railway Co. v. Cheyenne,* 113 US 516, 5 S Ct 601, 28 L Ed 1098 (1885). In that case, the City of Cheyenne was allowed to tax its pro rata share of the railroad's entire property within the territory. The court observed that value depended upon the whole line as a unit and that separate miles of the unit were almost valueless. This same concept was later applied to various common carriers.* See also the leading case of *Adams Express Company v. Ohio,* 165 US 194, 17 S Ct 305, 41 L Ed 683 (1897). See also Miller, *State Income Taxation of Multiple Corporations and Multiple Businesses,* 49 Taxes 102 (1971); and G. Altman and F. Keesling, *Allocation of Income in State Taxation* 89-105 (2d ed 1950).

Various tests have been presented for determination of a unitary business. One of the first accepted tests was that of the three unities or a variation thereon. Basically, the concept states that circumstances call for apportionment when there is unity of ownership, unity of management and unity of operation. See *Humble Oil & Refining Co., supra.* In that case, however, the Oregon Tax Court also stated that it was important that the in-state business depend upon or contribute to the business out of state (4 OTR at 292). It has been stated that, at least since *Adams Express Company, supra,* the U. S. Supreme Court has recognized that unity of use and management of a business which is scattered through several states may be considered when a state attempts to impose a tax on an apportionment basis. In *Butler Bros., supra,* the court found a unity of ownership and management and "the operation of the central buying division alone demon-

---

* See Annot: Doctrine of unity of use for purposes of taxation as applied to manufacturing or industrial concerns, 27 ALR 906 (1923).

strates that functionally the various branches are closely integrated." The court in *Butler Bros.* stated the elements of a unitary business, applying the three-unities test: there must be a unity of ownership, though 100 percent ownership was not required; there must be a unity of operation as evidenced by central purchasing, advertising, accounting and management; and there must be a unity of use in a central executive force and general system of operation. See also *Chase Brass & Copper Co. v. Franchise Tax Bd.*, 10 Cal App3d 496, 86 Cal Rptr 350, 87 Cal Rptr 239, 95 Cal Rptr 805 (1970), and *Edison California Stores v. McColgan*, 30 Cal2d 472, 183 P2d 16 (1947). It appears that some states may still follow the three-unities concept. In *Western Contracting Corp. v. State Tax Com'n*, 18 Utah2d 23, 414 P2d 579 (1966), the Supreme Court of Utah stated that the unitary nature of a business was definitely established by the presence of the three unities.

The three-unities concept, however, has been widely criticized. See G. Altman and F. Keesling, *op cit supra,* at 102, and Keesling and Warren, *op cit supra,* at 48. In this latter work, the authors state that the three unities are, at best, ambiguous, if not actually meaningless. They are of little help since they give no clue to determining a particular case.

Occasionally, a court has stated that the test involves whether the two corporations are "closely connected." See *Cleveland Cliffs Iron Co. v. Michigan Corp. & Sec. Comm.*, 351 Mich 652, 88 NW2d 564 (1958). However, in that case the question of unitary operation did not control.

Most courts, contemplating a group of closely connected corporations, attach most significance to the

generally accepted test of "dependent and contributing." The Department of Revenue's regulation under ORS 314.615 states that the test is whether the operation of a business "within Oregon is dependent on or contributes to the operation of the business outside the state." These regulations carry the force of law if duly promulgated and properly interpretive of the enactment of the Legislative Assembly. *Union Pacific Railway Co., supra.* The regulation appears to reflect the current thought in the test for a unitary business. In *Humble Oil & Refining Co., supra,* although decided under the prior statute, the court alluded to the current regulatory test of a unitary business and spelled out, in addition, the three-unities test. At 4 OTR 292-293, the court said:

> "* * * All segments of plaintiff's business have a great deal in common and contribute to and are dependent upon each other. * * *
> "* * * * *
> "* * * Costs incurred here led to profits elsewhere, and the primary measure of success of Oregon activities was not the profit or loss shown on the income statements of the local service stations, but rather it was the contribution the stations made to plaintiff's over-all operations and growth that really counted. * * *"

Various cases have expressed the dependent-and-contributing test as an alternative even though they had avowed the three-unities test. See *Edison California Stores, supra,* and *Butler Bros., supra.* See also *Western Auto Supply Co. v. Commissioner of Taxation,* 245 Minn 346, 355, 71 NW2d 797 (1955); and *Crawford Manufacturing Co. v. State Comm. of Revenue & Taxation,* 180 Kan 352, 359, 304 P2d 504 (1956).

The dependent-and-contributing test has not, of course, gone without criticism. In Keesling and War-

ren, *op cit supra,* the authors state, at 48, that the dependent-and-contributing concept is deficient because it does not clearly indicate that such relationship is the sole criterion for distinguishing separate and unitary. They continue as follows:

"* * * Furthermore, the use of the word 'dependent' is confusing and misleading. Dependency suggests liability. If the activities within a given state are only dependent upon the activities out of the state, and do not contribute to the earning of income, they should not be credited with any portion of the income derived from productive activities outside the state. Hence, contrary to the implication of this definition, where the activities in a given state are dependent only, they should not be considered as constituting a portion of a business which includes activities in other states which do contribute to the earning of income."

Occasionally, cases arise where it is stated that a multistate business is a unitary business when the operations conducted in one state benefit and are, in turn, benefited by the operations in another state. *Great Lakes Pipe Line Co. v. Comm'r of Taxation,* 272 Minn 403, 409, 138 NW2d 612 (1965); *Maurice L. Rothschild & Co. v. Comm'r of Taxation,* 270 Minn 245, 133 NW2d 524 (1965). However, this benefit-to and benefit-from test appears to be merely a restatement of the dependent-and-contributing test since, when one corporation is dependent upon another, it receives benefit from the second corporation.

Though the Multistate Tax Compact was not adopted by the State of Oregon until after the tax years here in question, the regulations under that compact are of interest in the definition and test of a unitary business. The Department of Revenue's rule, OAR 150-314.615-(F), is entitled, "Two or More Busi-

nesses of a Single Corporation." Example No. (2) states:

> "Steps in a vertical process. A taxpayer is almost always engaged in a single trade or business when its various divisions are engaged in different steps in a large, vertically structured enterprise. For example, a taxpayer which explores for and mines copper ores; concentrates, smelts and refines the copper ores; and fabricates the refined copper into consumer products is engaged in a single trade or business, regardless of the fact that the various steps in the process are operated substantially independently of each other with only general supervision from the taxpayer's executive offices."

In addition to this statement, the new rules also put emphasis on the same type of business under a strong, centralized management.

In Lavelle, *What Constitutes a Unitary Business*, U So Cal 1973 Tax Inst 239, 247-248, the author states that in the case of *Chase Brass & Copper Co., supra,* the court indicated that the levels at which major policy matters were established was more significant in determining the unitary character of the business than the level at which day-to-day operating decisions were made. "It may also be observed that the presence of substantial *inter-company sales* remains an *important element* of unity even though such sales are made at the *same price* to both *affiliated* and *nonaffiliated* purchasers." (Emphasis supplied.)

Of course, not all cases have been in congruity with the several tests. In *Interstate Finance Corp. v. Dept. of Taxation,* 28 Wis2d 262, 137 NW2d 38 (1965), the court held that a wholly owned subsidiary in the same business of financing automobiles, that borrowed from the parent like a branch of the parent, was not

part of a unitary business. However, that case is supposedly based 'on the fact that Wisconsin did not have any provision for consolidated reporting.

Likewise, in the case of *Skelly Oil Co. v. Commissioner of Taxation*, 269 Minn 351, 131 NW2d 632 (1964), the court held that the board was justified in holding the company was involved in two separate businesses of production and marketing. Only ten percent of total production went to marketing and there was no production at all in the state. The court stated that income developed by the production division was earned at the point of production. This case is strongly criticized in J. Hellerstein, *State and Local Taxation* (3d ed 1969), at 400. See also *Okla. Tax Comm. v. Southwestern Bell Tel. Co.*, 396 P2d 500, 5 CCH STC 15,569, ¶ 250-144 (Okla S Ct 1964). In *Skelly,* the court held that a separate accounting method could be employed to compute the corporation's income from intrastate operations, since the business activity producing this income was so separate and complete that the operation could be conducted as an independent, profit-making business entity. Compare *Butler Bros., supra.*

A further refinement of the test of a unitary business separates such businesses into those with the characteristics of "operational unity" and those with the qualities of "economic unity." Keesling and Warren, *op cit supra,* at 50-51. The authors distinguish the two as follows:

> "* * * Operational unity occurs wherever property or the services of individuals directly contribute to the earning of income, which is the inseparable product of these combined elements. * * *
>
> "* * * * *

"Economic unity exists where there are two or more series of activities, which from an operational standpoint, are separate and distinct from one another, but which because of economic interrelationship, should be considered as constituting a single business. * * *"

The test apparently required by Oregon statutes and case law, both before and after the 1965 amendment, is that reflected in the regulations under ORS 314.615. This test, stated in full above, is the dependent-and-contributing test which is believed by this court to be dominant in the better decisions in recent case law.

In various cases in the past, this court has been asked to examine the unitary concept. In *Wah Chang Corp. v. Commission,* 2 OTR 31 (1964), the court stated that to defeat segregated accounting under the former statute, there must be a mutual' contribution to their respective profits by various divisions of the company. This court stated further, at 38-39:

"* * * Each unit must contribute to the success of the over-all venture by individually or jointly *permitting it to accomplish sales,* savings, or profits throughout its various units which those various units could not realize individually. When this occurs, segregated accounting does not truly reflect the income of the individual unit because there is no way to individually measure this mutual contribution. * * * On the other hand, when one unit of a business is so dissimilar from all its other units that *the unit doesn't buy or sell the same things,* its accounting is completely different and separate, its operational processes are completely different, and its purchases and sales contribute nothing to the other units, * * * then that unit is segregated and entitled to segregated accounting." (Emphasis supplied.)

In *Wah Chang Corp., supra,* this court held that a foreign corporation which established a plant within Oregon to refine a metal different from that produced by the corporation as a whole was not a unitary business operation but could report by the segregated accounting method. The test given in that case is not the one provided by statute but it appears that the wording is clearly analogous.

In *Hamilton Management Corp. v. Com.,* 3 OTR 154 (1968), *aff'd* 253 Or 602, 457 P2d 486 (1969), a Delaware corporation earned income from two divisions. The sales division operated in Oregon while the investment advisory division did not. Applying a dual test, whether parts of the business were too closely connected and necessary to each other to justify division and also whether they were dependent or contributing, the Tax Court held, under the regulations, that the two divisions were not so closely connected that they constituted a unitary corporation. See also *Tucker-Ottmar Farms v. Dept. of Rev.,* 4 OTR 179 (1970), and *Humble Oil & Refining Co., supra.*

The facts of the present case do not approach the hazily drawn line separating a segregated business from a unitary one. The sincere testimony of Mr. Paul L. Dillingham, one of plaintiff's witnesses, protests the defendant's action of uniting the income of plaintiff and subsidiary as "abnormal," in "putting these two pieces together when the type of business is so completely separate * * *." The alleged separation, however, is not so apparent to the court. The disparity of return of income of parent and subsidiary, emphasized by the witness, would not be deemed remarkable under the facts of *Butler Bros., supra.* Also see *Zale-Salem, Inc., supra.* Unity of ownership is

present, and effective control of management and operation stems from that, in a typical vertical operation which is not compelled but exists in fact. J. Hellerstein's criticism of the *Skelly* case, referred to above, is equally appropriate to Mr. Dillingham's contention. The three-unities test, however, as discussed above, is not the best test which can be applied.

As emphasized by the Supreme Court in *Hines Lumber Co., supra,* at 539, a knowledge of the facts of the present case is essential. They must be subjected to the dependent-contributing test promulgated by the regulations under the statute. If the regulations were applied literally to the present case, it is clear that the Coca Cola Company and Pacific must be termed "unitary." Since the wholly owned subsidiary receives its unique, basic component from the parent, it is clearly *dependent* upon the parent for that component; this is especially true since the production of that component is a secret process. In terms of contribution, any wholly owned subsidiary would have to be termed contributing since any dividends declared would accrue to the parent. Whether the dependent-and-contributing test may be taken at face value has been criticized by Keesling and Warren, *op cit supra,* where it is stated that when the subsidiary's actions are merely dependent and not contributing, the unitary concept should not be applied. In the present case it is difficult to see how the subsidiary can be described in any terms other than "contributing to" and "dependent upon" the parent corporation.

 The argument has been advanced (and finds some authority in older decisions) that if the subsidiary could be operated as a separate business, then it should be deemed a separate business for taxing

purposes. Apart from the reference to vertical integration in the Multistate Tax Compact, not directly applicable here, a subsidiary within a vertical process involving the parent corporation conceptually should always meet the dependent-and-contributing test. To argue that a bottling company is not dependent upon and contributing to the syrup-producing parent is incongruous. Such an argument, if accepted, would also exempt from application of the unitary concept each separate process in, for example, the production of steel or any other manufacturing organization composed of steps. A mining company, a wholly owned subsidiary, could conceivably operate on its own. Likewise, the steel mill could operate independently, purchasing iron ore and other ingredients from sources other than its wholly owned subsidiary. The fabrication and warehouse facilities could also be termed separate. Furthermore, the marketing organization, following the lead of the *Skelly Oil Co.* case, *supra,* could argue that its marketing expertise could be applied to steel produced by any other mill as well as its own. But, as said by J. Hellerstein, *op cit supra,* 401:

> "* * * We would then be dealing with a different business; we would not be dealing with Skelly Oil Company, with the strengths and weaknesses of an integrated operation that commences at Skelly's oil wells in Texas and Oklahoma, and carries on with the manufacture of refined products in Minnesota and elsewhere, that are sold to customers in Minnesota by the Skelly organization. It is these components of the integrated operation that must be dealt with.

> "The tendency over the country by the courts has been to recognize that, whatever the difficulties of formulary apportionment, the attempt to separate out the profits of integrated steps of a business enterprise, is unrealistic."

Likewise, in the present case, the bottling company subsidiary could argue logically that its bottling activities could easily be converted to the bottling of a soft drink produced by a producer other than its parent, and the parent could, therefore, argue that its syrup-producing activities could be contributing only to bottling companies which were separately owned. However, the facts of the present situation are emphatically clear in that, though the operations possibly *could* be operated as separate businesses, they *are* operated as a vertically integrated process, the parts being separated only by the veil of separate incorporation. As this court stated in the recent case of the *Sperry & Hutchinson Co. v. Dept. of Rev.,* 5 OTR 301 (1973) *aff'd* 270 Or 329, 527 P2d 729 (1974), it is inconsequential whether or not the companies are separately incorporated. Separate incorporation often comes within the area of substance versus form (an expression used to describe the judgment of a court that a particular legalism, if given effect, would unconscionably pervert legislative intent).

This court finds the bottling operation of the corporate subsidiary to be so inextricably connected to the parent syrup-producing corporation that to state that the profits of one were not dictated by the operations of the other would be inconceivable. The fact, emphasized repeatedly throughout the trial of this case, that the wholly owned subsidiaries constitute less than five percent of the total number of bottling companies and that the syrup is sold to the subsidiaries at the same price it is sold to the independent bottling company has little bearing on the decision of this court. The numerical size of the involvement is as inconsequential as the amount of tax contested. The bottling

company operation, while compared to the parent syrup-producing operation, is clearly analogous to a standard vertically integrated industry. The vertical integration in and of itself tends to satisfy the dependent-and-contributing test presented by the regulations, and the fact that the independent bottling companies are not within the same ownership, though within the vertical process, does not rescue the vertical integration of the wholly owned subsidiaries from the definition of a unitary business. Adopting the terminology of Keesling and Warren, *op cit supra*, the vertical integration of the beverage producing processes apparently further distinguishes the unity present as operational rather than economic. See *Hamilton Corp. v. Tax Com.*, 253 Or 602, 611, 457 P2d 486 (1969).

The plaintiff has stated that, assuming the court should find the existence of a unity between the two levels of the business, it is the plaintiff's position that the determination of unity itself is not determinative of the calculation of the Oregon tax. The plaintiff's counsel further states that "despite the finding of a unitary operation, the Oregon law will permit and in fact will, in certain circumstances, demand the use of other methods of reporting to fairly and accurately determine the amount of income subject to tax in the State of Oregon." While some may argue this statement, it is at least essentially correct for the tax years 1963 and 1964, which are subject to the former code section requiring the fair and accurate determination of income. While it is true for those two tax years that the determination of unity in and of itself is not the final decisional factor, this court finds that the application of the unitary concept, to achieve a fair and accurate reporting of income, requires the apportionment method to be applied to

those two years, as well as the two succeeding years. A different result would be an implicit statement that the application of the unitary concept to 1964 and 1965 required other than fair and accurate reporting of the income subject to Oregon tax. A strong showing is required to justify deviation from the apportionment approach, once the unitary business is proven. The showing in the present case has not reached the requisite level. The "palpably disproportionate result" referred to in *International Harvester Co., supra,* has not been proved.

In conclusion, this court finds that the plaintiff has not met the burden of proving, by a preponderance of the evidence, that the unitary concept as applied to the corporations involved here, in requiring the apportionment formula to be applied to the total assets of the parent and its wholly owned bottling company subsidiary, fails to determine fairly and accurately, the amount of income subject to tax in the State of Oregon. While these questions are always a matter of degree, it appears to this court, and it is so held, that the corporations are dependent upon and contribute to each other to such an extent that to permit them to report on a segregated basis would distort the income attributable to the operations within the State of Oregon. The defendant's order is affirmed.