No. 45,146

WESTERN NATURAL GAS COMPANY, a Dissolved Corporation of the State of Delaware, *Appellee*, v. JAMES T. McDONALD, Director of Revenue for the State of Kansas, *Appellant*.

(446 P. 2d 781)

Opinion filed November 9, 1968.

*O. F. Baldwin*, of Topeka, argued the cause and *William L. Harris, Jr.*, of Topeka, was with him on the brief for appellant.

*Joseph W. Kennedy*, of Wichita, argued the cause and *Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock, C. Robert Bell, Robert L. Driscoll* and *Robert I. Guenthner*, all of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This action involves the validity of an income tax assessment made by the director of revenue in the sum of $294,-363.09. The district court set the assessment aside and entered judgment in favor of appellee. The director has appealed.

The action was tried on a stipulation of facts. The basic stipulations indicate Western Natural Gas Company was authorized and did business in Kansas and fourteen other states. Western was an

integrated oil company. Its principal office from which the business was directed was in Houston, Texas. It was engaged in the exploration for, production, transportation, refining and marketing of petroleum products. Between 1941 and 1947 Western acquired a substantial acreage of oil and gas leases in Kansas. These leases were held for exploration and production and not for resale. No sale of lease acreage occurred from 1947, the time Western began business operations in Kansas, to 1963, the date of liquidation. The board of directors of the company adopted a plan for complete liquidation of the company. As required by the plan the holders of two-thirds of the common stock voted their approval. The entire property of the company was liquidated by sale in 1963. The company is now a dissolved corporation. Western realized $8,086,-898 gain on the sale of its oil and gas leases on Kansas acreages.

The income tax return of the company for the year 1963 included gains from the sale of tangible equipment located on the leases in Kansas but did not include gains attributable to the sale of oil and gas leases. These gains were excluded on the theory they were non-business income from intangible personal property, taxable at the commercial domicile of the company in Texas.

The director of revenue made the assessment against the company and now contends these gains constituted business income taxable in Kansas.

In 1963 the legislature passed the Uniform Division of Income for Tax Purposes Act (K. S. A. 79-3271 *et seq.*). This act was passed to provide for uniform allocation and apportionment of the state income taxes of any taxpayer doing a multi-state business.

Pertinent provisions of the act read as follows:

K. S. A. 75-3271. "As used in this act, unless the context otherwise requires:

"(*a*) 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

"(*b*) 'Commercial domicile' means the principal place from which the trade or business of the taxpayer is directed or managed.

. . . . . . . . . . . . .

"(*e*) 'Non-business income' means all income other than business income."

K. S. A. 79-3274 then provides for the allocation of non-business income as follows:

"Rents and royalties from real or tangible personal property, capital gains, interest, dividends, or patent or copyright royalties, to the extent that they constitute non-business income shall be allocated as provided in sections 5 through 8 [79-3275 to 79-3278] of this act."

K. S. A. 79-3276 specifically provides for the *allocation of non-business capital gain income*:

"(*a*) Capital gains and losses from sales of real property located in this state are allocable to this state.

"(*b*) Capital gains and losses from sales of tangible personal property are allocable to this state if

"(1) the property had a situs in this state at the time of the sale, or

"(2) the taxpayer's commercial domicile is in this state and the taxpayer is not taxable in the state in which the property had a situs.

"(*c*) *Capital gains and losses from sales of intangible personal property are allocable to this state if the taxpayer's commercial domicile is in this state.*" (Emphasis supplied.)

We discern no discrepancy between the general provisions of K. S. A. 79-3202 (2), 79-3203 (*a*), 79-3205 (*a*) and the specific provisions of K. S. A. 79-3271, *et seq.* which relate to allocation and apportionment of income. The specific provisions relating to allocation appear decisive of the questions posed.

The rights created by oil and gas leases covering land in Kansas constitute intangible personal property except when that classification is changed for a specific purpose by statute. (*Connell v. Kanwa Oil Inc.,* 161 Kan. 649, 170 P. 2d 631; *Denver National Bank v. State Commission of Revenue & Taxation,* 176 Kan. 617, 272 P. 2d 1070.)

After the decision in *Denver National Bank* the legislature amended the inheritance tax act to provide that oil and gas leases on lands in Kansas should be considered tangible personal property for the purposes of the inheritance tax act. (K. S. A. 79-1501.) The change was limited to inheritance taxes. We find no similar provision in the income tax law of Kansas and none has been called to our attention. In construing and applying the present income tax law of Kansas the rights conferred by these oil and gas leases constitute intangible personal property.

Our next question is whether the income realized by Western on the sale of leases was "business income" as defined by K. S. A. 79-3271 (*a*). To constitute business income it must arise from transactions and activity in the regular course of a trade or business. Business income includes income from intangible property if the acquisition, management and disposition giving rise to the income

constitute integral parts of the regular trade or business operations. It is not the use of the property in the business which is the determining factor under the statute. The controlling factor by which the statute identifies business income is the nature of the particular transaction giving rise to the income. To be business income the transaction and activity must have been in the regular course of taxpayer's business operations.

In an analogous case this court held the sale of the entire stock of oil on hand was not a sale "in the ordinary course of trade or business" as that term is used in the Kansas Bulk Sales Law. (See *Oil Co. v. Consolidated Companies,* 110 Kan. 245, 203 Pac. 915.)

The rule of statutory construction set forth in K. S. A. 1967 Supp. 77-201. (*Second*) reads:

"Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

In construing the present statute we are mindful of the above statutory rule as well as those fundamental rules stated in Syllabus 1 of *Hand v. Board of Education,* 198 Kan. 460, 426 P. 2d 124, and in syllabi 1 and 2 of *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 438 P. 2d 128. These rules are well established and need not be quoted at length.

The word "regular" is defined in Webster's Third New International Dictionary (Unabridged) as steady or uniform in course, practice or occurrence and not subject to unexplained or irrational variation.

The present sale of leases cannot be considered made in the regular course of business operations. This sale by Western included all of its assets. A complete plan of liquidation was carried out requiring the affirmative vote of the stockholders. The sale was not made in the regular course of taxpayer's business operations when measured by its former practices. It had not sold oil and gas leases. The sale contemplated cessation rather than operation of the business.

The income from the sale falls in the classification of non-business income. The allocation of such income is controlled by K. S. A. 79-3276. Rights in oil and gas leases are intangible personal property for the purposes of our present income tax act. As such the capital gain would have been allocable to Kansas under K. S. A.

79-3276 (*c*) if the taxpayer's commercial domicile was in Kansas. The commercial domicile of Western was in Houston, Texas. Therefore, the income from the sale of Western's intangible personal property is not taxable in Kansas.

What has been said disposes of this appeal but one additional contention of the director should be considered. The case of *Republic Natural Gas Co. v. Axe*, 197 Kan. 91, 415 P. 2d 406 is cited to support the contention that gain realized from the sale of oil and gas leases in a complete liquidation of such a corporation is legally taxable in Kansas. In *Republic* we were not confronted with allocation of income under the uniform act. The tax year involved in that case ended June 30, 1962. The uniform act is applicable to taxable years commencing after December 31, 1962. (K. S. A. 79-3293). The provisions of the uniform act were not considered in *Republic* and did not apply to the taxable year under consideration.

The judgment setting aside the additional assessment is affirmed.