Argued January 7, affirmed July 16, 1969

# HAMILTON MANAGEMENT CORPORA-
## TION, *Respondent, v.* STATE TAX
## COMMISSION, *Appellant.*
457 P2d 486

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Donald C. Seymour, Assistant Attorney General, Salem.

*Fred E. Neef,* Denver, Colorado, argued the cause for respondent. With him on the brief were Ralph H. Schlegel and Brown, Schlegel, Bennett & Milbank, Salem, and Glen B. Clark, Jr. and Neef, Swanson and Myer, Denver, Colorado.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE[*] and HOLMAN, Justices.

O'CONNELL, J.

This is a suit to require the defendant commission to refund corporate excise taxes for the fiscal years 1962, 1963 and 1964. Defendant appeals from a decree

---

[*] Denecke, J., did not participate in this decision.

of the Tax Court granting the relief sought by plaintiff. The facts are as follows:[1]

The plaintiff, Hamilton Management Corporation, is incorporated under the laws of Delaware, with its principal office in Denver, Colorado, and is qualified to do business in Oregon. In the various states, including Oregon, plaintiff acts in a dual capacity as (1) the investment advisor and (2) as the sales agency for the shares of Hamilton Funds, Inc. Hamilton Funds, Inc. is an incorporated mutual fund with its cash, securities and other assets deposited in the First National Bank of Denver, as custodian. As the shares of Hamilton Funds, Inc. are sold in the various states the payments are received by the bank as custodian and invested primarily in various common stocks which emphasize long-term growth. The board of directors of Hamilton Funds, Inc. consists of seven persons, all residents of Denver, the location of the company's principal office.

In addition to rendering the investment advisory service and maintaining the sales organization for the sale of shares in Hamilton Funds, Inc., the plaintiff is also in charge of sales of periodic investment certificates of Hamilton Fund. The latter is an investment trust arising through an agreement between Hamilton Management and the First National Bank of Denver. The purpose of the trust is to provide a means whereby shares in Hamilton Funds, Inc. may be purchased on the installment basis by making monthly payments. The buyer is issued a periodic investment certificate.

The plaintiff has conceded that its income received

---

[1] The facts are adopted from the opinion of the Tax Court with minor changes.

from the sale in Oregon of the Hamilton Fund, Inc. shares and Hamilton Fund periodic investment certificates is properly apportioned to Oregon and taxable by the defendant commission. The sole issue is whether the plaintiff's income from the advisory service rendered by it to Hamilton Funds, Inc. should also be apportioned to Oregon. The plaintiff contends that its sales division and its investment advisory division are two separate, independent and distinct entities and that income from the investment advisory service should not be apportioned to Oregon.

The following additional facts are important.

Hamilton Management, the plaintiff, and Hamilton Funds, Inc. entered into a written sales and distribution agreement for the sale of shares of the mutual fund and another agreement regarding the investment advisory services to be rendered to Hamilton Funds, Inc. Under the sales agreement which makes plaintiff the exclusive distributor of the shares of Hamilton Funds, Inc., the shares are sold at net asset value plus a sales charge ranging from 8.5 percent down to one-half of one percent depending on the amount of shares purchased. The purchaser sends his check to the First National Bank of Denver, as custodian. The bank deducts the sales charge, pays it to Hamilton Management, the plaintiff, and the balance is invested in shares of Hamilton Funds, Inc., with the purchaser receiving stock certificates. According to the testimony the purchaser, instead of having an interest in the securities and assets owned by Hamilton Funds, Inc. has a share of stock in the latter, redeemable at his request. A shareholder in Hamilton Funds, Inc. has no interest in Hamilton Management. All of the assets of Hamilton Funds, Inc.—stocks, security, cash—are kept in the First National Bank of Denver under the

custody agreement. Plaintiff's income from the sales and distribution agreement accrues from the sales charges mentioned.

The investment advisory agreement between plaintiff and Hamilton Funds, Inc. provided that the plaintiff would render investment advice to the board of directors of Hamilton Funds, Inc. The board appointed an investment advisory committee of five members to work with the research department and the portfolio manager of Hamilton Management. Recommendations to buy or sell are made to the committee and the committee reports this information to the board of directors of Hamilton Funds, Inc., which is free to accept or reject the advice. According to the testimony the orders for purchases or sales are "done by the traders in the investment research division of Hamilton Management Corporation" but could be done by the board of directors of Hamilton Funds, Inc.. The investment advisory contract provides for a sixty-day notice of termination by either party. The board of directors of Hamilton Funds, Inc. was free to, and did, receive some investment advice from brokerage houses with whom they bought and sold. All the investment advisory services occurred in Denver. Hamilton Management's income from the investment advisory service is computed by applying a certain percentage to the market value of the net assets of Hamilton Funds, Inc.; this amount is computed on a daily basis and paid quarterly to plaintiff. The amount of income from the advisory service consequently is affected by the market value and size of the portfolio of Hamilton Funds, Inc.

Of the seven members of the board of directors of Hamilton Funds, Inc., two are also on the board of Hamilton Management, the plaintiff. The others have

no interest or employment relationship with plaintiff. All of plaintiff's officers are residents of Denver. Plaintiff's sales and advisory divisions are in the same building in Denver, but located on separate floors. The personnel and the activities of the sales division are entirely unrelated to the activities and personnel of the advisory division. Both divisions, however, make use of the same legal, accounting and supply departments.

Plaintiff concedes that the income from the sale of the Hamilton Fund, Inc. stock and periodic investment certificates in Oregon is taxable by the state of Oregon. Plaintiff contends, however, that income earned by it in rendering investment advisory service to Hamilton Funds, Inc. is not subject to tax in Oregon.

The Tax Court interpreted the Tax Commission's own regulations as exempting the advisory income from taxation by the state of Oregon. The Commission's regulation 4.280(1)-(B) provided as follows:[2]

"If the business of the taxpayer is carried on both within and without this state, and the income properly attributable to Oregon may be fairly reflected only by treating the business within and without the state as a unitary business, the apportionment method must be used. *The term 'unitary business' means that the taxpayer to which it is applied is carrying on a business, the component*

---

[2] The regulation was promulgated pursuant to ORS 314.280 (1), which during the years in question read as follows:

"If the gross income of a corporation * * * is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state." Or Laws 1963, c. 319, § 1.

*parts of which are too closely connected and neces-sary to each other to justify division or separate consideration as independent units.* Where Oregon activities are part of a unitary business carried on within and without the state, the portion of the unitary income subject to tax in Oregon will be determined by the apportionment method. Where the activities carried on within the state are sepa-rate from the activities carried on outside of the state, the income subject to tax may be determined upon a separate accounting of the Oregon activi-ties. *Basically, if the operation of a business within Oregon is dependent on or contributes to the opera-tion of the business outside the state, the entire operation is unitary in character, and the income from Oregon activities will be determined by the apportionment method.* In all cases where the business is unitary, some type of an apportionment formula will generally be employed, not separate accounting. * * *" (Emphasis supplied.)

Applying the test set forth in the first italicized portion of the regulation the Tax Court held that plaintiff's investment advisory service was not so "closely connected" with the selling of the mutual fund shares as to warrant the treatment of the busi-ness as unitary. In explanation the Tax Court said: "There is some unity of services because both the sales division and the investment advisory division have the same legal, accounting and supply depart-ments. However, the employees of the sales division do not render any services in connection with the in-vestment advisory division. The investment advisory division and the sales division are separate and in-dependent of each other and under the defendant's regulation may be considered as independent units."

Applying the test stated in the second part of the regulation in italics the Tax Court concluded that

plaintiff's sales activity neither depended upon nor contributed to the operation of plaintiff's advisory service in Colorado. The Tax Court said: "While the investment advice was generally accepted by Hamilton Fund, Inc., the latter was free to and did receive some investment advice from other sources. Presumably, if the investment advice given by plaintiff was consistently erroneous it would affect the value of the shares which possibly would lessen a buyer's interest in the fund but this is considered to be too remote."

We agree with the Tax Court's conclusion that the investment advisory division and sales division of plaintiff company are separate and independent units and that the income derived from the investment advisory division is not subject to the Oregon income tax.[9]

1. It is true that there is connection between sales of Hamilton Fund, Inc. shares in Oregon and plaintiff's investment advisory fee, since the advisory fee is based upon a percentage of the daily market value of the net assets of Hamilton Funds, Inc. which would of course be increased by sales in Oregon. But the mere fact that this cause and effect relationship is shown does not establish the nexus necessary to satisfy the due process clause of the Fourteenth Amendment. As we said in *American Refrigerator Transit Co. v. State Tax Comm.*, 238 Or 340, 347, 395 P2d 127 (1964):

"* * * Income, no matter where received,

---

[9] The Tax Court also reasoned as follows: "It is entirely possible that Oregon's sales contribution to the portfolio would be more than offset by a drop in the stock market or by the redemption of shares in which event the Oregon sales would have no effect at all on plaintiff's advisory fee." We do not endorse this reasoning since Oregon sales would always constitute an increment to the value of Hamilton Fund, Inc.'s net assets.

ordinarily is the product of economic influences operating from many sources, some far back in the chain of economic cause and effect. To establish nexus it is necessary to show that the taxpayer has, in the conduct of his business, taken advantage of the economy of the taxing state to produce the income which is subjected to tax."

 Plaintiff has not "taken advantage" of the economy of the state of Oregon or received any other benefits provided by the state of Oregon in connection with the conduct of plaintiff's investment advisory business in Colorado.[②] Oregon has provided a market for plaintiff's sales of the Hamilton Fund, Inc. shares and therefore is entitled to tax plaintiff for the benefits thus conferred. This it has done. But adopting the test stated in *Northwestern States Portland Cement Co. v. Minnesota,* 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 431, 67 ALR2d 1292 (1959), Oregon cannot point to any "opportunities which it has given," or to any "protection which it has afforded" or to any "benefits which it has conferred" in relation to plaintiff's business in Colorado of advising Hamilton Fund, Inc. Plaintiff's sales in Oregon, together with sales in other states, is simply used as a measuring device to fix plaintiff's investment advisory fee. Except for this measuring feature plaintiff's sales activity in Oregon has no relationship whatsoever with the conduct of

---

[②] The test of constitutional nexus is stated in Northwestern States Portland Cement Co. v. Minnesota, 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 431, 67 ALR2d 1292 (1959), as follows:

"* * * 'The controlling question is whether the state has given anything for which it can ask return; * * * [whether] the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred * * *.'" Quoting from Wisconsin v. J. C. Penney Co., 311 US 435 at 444, 61 S Ct 246, 85 L Ed 267, 130 ALR 1229.

plaintiff's investment advisory business in Colorado. Tested by regulation 4.280(1)-(B) the operation of plaintiff's business of selling shares in Oregon is not "dependent on" nor does it "contribute to" the operation of plaintiff's advisory service business outside the state.[9] Keesling and Warren, in an article entitled "The Unitary Concept in the Allocation of Income," 12 Hastings L J 42, 48 (1960) explain that "It is only where the activities within and without the state constitute inseparable parts of a single business that the classification of unitary should be used. The description of a group of activities as a business implies the existence of a unit, which in turn implies that different activities have something in common, which leads to their inclusion in the unit." As these authors point out, the unity may be either "operational" or "economic." "Operational unity occurs wherever property or the services of individuals directly contribute to the earning of income, which is the inseparable product of these combined elements \* \* \*. Economic unity exists where there are two or more series of activities, which from an operational standpoint, are separate and distinct from one another, but which because of economic interrelationship,

---

[9] The test found in regulation 4.280(1)-(B) has been criticized in Keesling and Warren, The Unitary Concept in the Allocation of Income, 12 Hastings L J 42, 48 (1960) where it is said:

"\* \* \* [T]he use of the word 'dependent' is confusing and misleading. Dependency suggests liability. If the activities within a given state are only dependent upon the activities out of the state, and do not contribute to the earning of income, they should not be credited with any portion of the income derived from productive activities outside the state. Hence, contrary to the implication of this definition, where the activities in a given state are dependent only, they should not be considered as constituting a portion of a business which includes activities in other states which do contribute to the earning of income."

should be considered as constituting a single, business." *Id.* at 50-51.

■ Applying these tests it would seem clear that plaintiff's sales activity and its advisory service activity are not "inseparable parts of a single business" and do not have anything "in common, which leads to their inclusion in the unit." There is neither operational nor economic unity as defined above.

The Tax Commission relies upon *American Refrigerator Transit Co. v. State Tax Comm.*, 238 Or 340, 395 P2d 127 (1964). In that case we held taxable the rental income from railroad cars which were used by operating railroads in hauling goods to, into and through Oregon. We reasoned that the lessor took advantage of the economic milieu within this state to realize a profit and that the benefits provided by Oregon were "a substantial economic factor in the production of the taxpayer's income." 238 Or at 346. As we have explained above, although Oregon has conferred a benefit on plaintiff in relation to its sales activity (for which benefit plaintiff has paid), Oregon has not conferred a benefit of any kind in relation to its investment advisory business.

The judgment of the Tax Court is affirmed.