540 P.2d 1300
**CHAMPION INTERNATIONAL COR-PORATION, Appellant,**

v.

**BUREAU OF REVENUE, State of New Mexico, Appellee.**

**No. 1746.**

Court of Appeals of New Mexico.
Aug. 13, 1975.
Rehearing Denied Aug. 13, 1975.
Certiorari Denied Oct. 6, 1975.

**412**

Benjamin J. Phillips, White, Koch, Kelly & McCarthy, Santa Fe, Dennis J. Barron, David A. Beanblossom, Frost & Jacobs, Cincinnati, Ohio, for appellant.

Toney Anaya, Atty. Gen., Jan E. Unna, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Champion International Corporation (Champion) appeals the Decision and Order of the Commissioner of Revenue (Commissioner) which assessed additional corporate income tax for the year 1972.

The Commissioner found that Champion erroneously allocated as *"nonbusiness income"* the income it received in the form of interest, rent, and gains from the sale of assets. The Commissioner found that such income was properly classified as *"business income"* under § 72–15A–17(A), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, 1973 Supp.). This section falls within the Uniform Division of Income for Tax Purposes Act, "UDITPA", [§§ 72–15A–16 to 72–15A–36], which provides the uniform division for income tax purposes, among the states participating in the Multistate Tax Compact, of the income of a multistate business. See § 72–15A–37.

Champion is a New York corporation engaged, in fifty states, in manufacturing and selling a variety of wood products, including building materials, paper, pulp, packaging, and home furnishings.

Champion protested the assessment made. At the hearing on Champion's protest of the assessment, Champion was represented solely by an employee, a tax consultant. He had not prepared the tax re-

turns. He evidenced no knowledge of the conglomerate business operation of Champion. However, Champion relied solely on this tax consultant at the hearing. Champion tendered no business records, documents or other exhibits to support its claims.

This case can be decided by affirmance in two ways: (A) The record leaves us no basis on which to make any determination whether all of. Champion's activities were an integral part of their New Mexico operations and (B) an analysis of the statute and its application to Champion's income.

(A) *No Basis to Make Determination*

A multistate business is a "unitary business" for income tax purposes when operations conducted in one state benefit and are in turn benefited by operations in another state. *Great Lakes Pipe Line Co. v. Commissioner of Taxation,* 272 Minn. 403, 138 N.W.2d 612 (1965). "If its various parts are interdependent and of mutual benefit so as to form one integral business rather than several business entities, it is unitary." *Webb Resources, Inc. v. McCoy,* 194 Kan. 758, 766, 401 P.2d 879, 886 (1965).

On the other hand, " . . . [I]f a multistate business enterprise is conducted in a way that one, some or all of the business operations outside [New Mexico] are independent of and do not contribute to the business operations within this State, the factors attributable to the outside activity may be excluded." *Commonwealth v. ACF Industries, Incorporated,* 441 Pa. 129, 271 A.2d 273, 280 (1970). See, Rudolph, State Taxation of Interstate Business: The Unitary Business Concept and Affiliated Corporate Groups, 25 Tax L.Rev. 171 (1970).

"Any assessment of taxes made by the bureau is presumed to be correct." Section 72–13–32(C), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1973 Supp.). The duty rests on Champion to present " . . . evidence tending to dispute the factual correctness of the assessments." *McConnell v.*

*State ex rel. Bureau of Revenue,* 83 N.M. 386, 387–88, 492 P.2d 1003, 1004–05 (Ct. App.1971). Champion had the burden to overcome this presumption. *Mears v. Bureau of Revenue,* 87 N.M. 240, 531 P.2d 1213 (Ct.App.1975).

Champion has failed to produce evidence that its business activity outside of New Mexico was dependent or independent of its instate operations. Champion failed to show that interest, rent, and gains income was not an integral part of its business carried on in New Mexico. On the facts before us, no question is raised whether any of its income is nonbusiness income because there is no evidence that its activities were not part of a unitary business.

The state of the record leaves us no basis on which to make any determination as to whether all the business activity of Champion was an integral part of their New Mexico operations.

By this conclusion, the assessed additional corporate income tax for the year 1972 is affirmed.

(B) *An Analysis of the Statute and its Application to Champion's Income*

Champion contends that:

(1) Its income from interest, rents and the sale of logs constituted "nonbusiness income" which could not lawfully be taxed by the State of New Mexico.

(2) The amount that was attributable to the cutting of its timber, and that was taxed by the federal government as IRC § 631(a) gain, was unrealized income that could not lawfully be taxed by the State of New Mexico.

These questions are matters of first impression in New Mexico.

(1) *Income from interest, rents and log sales constituted "business income".*

Section 72–15A–17 defines "business income" and "nonbusiness income", under UDITPA, as follows:

A. "Business income" means income arising from *transactions and activity in*

*the regular course of the taxpayer's trade or business* and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations; [Emphasis added]

\* \* \* \* \* \*

D. "Nonbusiness income" means all income other than business income;

. . . .

What is meant by the italicized phrase, "transactions and activity in the regular course of the taxpayer's trade or business"? This is broad terminology.

We have been unable to find a technical definition of the phrase. "Transaction" is defined as " . . . something that is transacted: as a: a business deal . . . ." "Activity." is defined as " . . . an organizational unit for performing a specific function; *also*: its duties or function . . . ." "Regular" is defined as " . . . steady or uniform in course, practice, or occurrence . . . steadily pursued . . . . Synonyms: NORMAL, TYPICAL, NATURAL. . . ." "Course" is defined as ". . . accustomed procedure: customary action: usual method of proceeding . . . policy chosen: manner of conducting oneself . . . way of acting . . . ." Webster's Third New International Dictionary (Unabridged, 1961), at 2426, 22, 1913, 522.

Accordingly, we define the phrase "transactions and activity in the regular course of the taxpayer's trade or business" in § 72–15A–17(A) as:

Business deals and the performance of a specific function in the normal, typical, customary or accustomed policy or procedure of the taxpayer's trade or business.

Cf. *Western Natural Gas Company v. McDonald,* 202 Kan. 98, 446 P.2d 781 (1968).

(a) *Interest Income*

■ The tax consultant for Champion testified that interest income was derived from capital earned in the business. Rather than have a large cash balance in the bank, Champion purchased short-term investments and highly liquid assets from which interest income was derived. This was a specific function of Champion. The money from these short-term investments was needed for future business activity. It was usual and customary in Champion's business to follow this practice, whenever there was enough money or business income that was not immediately needed in the business.

Champion contends that the determining factor is the nature of the transaction from which the interest income was derived, and its relationship to Champion's business. The interest income was derived from investments. Champion argues that this is not "business income" because Champion is not in the investment business.

We disagree. Champion's representative testified that a normal and customary practice by Champion was to invest excess capital, not needed for business purposes, in short-term securities. Following our definition, supra, this was a specific function done in the regular course of Champion's business. Therefore, Champion's investment income is "business income".

Champion's reliance on *Western Natural Gas Company,* supra, is misplaced. It deals, not with recurring, customary investments, but with a one-time liquidation sale of all of the taxpayer's oil and gas leases.

*Sperry and Hutchinson Co. v. Department of Revenue,* 527 P.2d 729 (Ore.1974) interprets the reach of a statute almost identical to § 72–15A–17(A). Oregon is a party to the Multistate Tax Compact. The court distinguished, (1) income from short-term investments held to satisfy the corporation's need for capital from (2) long-term investment income that is *used* for other purposes. The former, the court held, arises from the transactions and activity in the regular course of the taxpayer's trade or business, and, therefore is

business income. Champion has failed to distinguish their investments from those found by the Oregon court to be business income.

In the instant case, Champion introduced no evidence as to the *use* to which it put its short-term investment income. This income was needed for future business activity. It necessarily follows that the income was *used* for this purpose. *Great Lakes Pipe Line Co. v. Commissioner of Taxation*, supra. In the light of *Sperry* and *Great Lakes,* that the *use* to which it put this income determines whether it is "business income", we affirm the Commissioner as to Champion's short-term investment income.

#### (b) *Rents*

■ Champion rented out approximately five percent of its total office space. It claims that the income derived from rent is not "business income" because Champion was not in the business of renting real estate.

Like "interest" income, supra, the most reasonable inference to be drawn from the record is that rental of available office space was a customary procedure, done in the regular course of Champion's business. We find no evidence in the record which contradicts this inference. Rental income was, therefore, "business income".

There was offered in evidence, without objection, I.T. Regulation 17(b). Subsection (1) is entitled *Rents from real and tangible personal property,* and reads:

> Rental income from real and tangible property is business income if the property with respect to which the rental income was received is used in the taxpayer's trade or business or is incidental thereto and therefore is includable in the property factor under I.T. Regulation 26.

Example iii under I.T. Regulation 17(b)(1) reads as follows:

> The taxpayer operates a multistate chain of men's clothing stores. The tax-

payer purchases a five-story office building for use in connection with its trade or business. It uses the street floor as one of its retail stores and the second and third floors for its general corporate headquarters. The remaining two floors are leased to others. The rental of the two floors is incidental to the operation of the taxpayer's trade or business. The rental income is business income.

Champion admits its rental operations fall under this example. However, it claims that the conclusion given—"the rental income is business income"—is "illogical" because an identical Indiana regulation reaches an opposite conclusion.

It is not "illogical" because the States of Arkansas, Idaho, Nebraska, North Dakota, Oregon and Utah, all parties to the Multistate Tax Compact, reach the same conclusion with this example as does New Mexico.

Nevertheless, we reach our holding in favor of the Commissioner without reliance on Regulation 17(b)(1).

#### (c) *Gains*

Champion obtained the raw materials for its manufacture of wood and paper products from timber on land owned or leased by it. Some of its logs were sold to telephone utilities for use as telephone poles. The gain on the sale of logs was $4,803,652. The tax consultant testified that since total sales were $1,339,000,000 the four million "is a drop in the bucket". Even "a drop in the bucket" must be apportioned if it is "business income". Again, however, Champion claims an exemption, because it is not in the business of selling logs for telephone poles. The sale of logs was a normal, customary procedure in the business of Champion for the year 1972 and had been for several years. The income arising therefrom was "income arising from transactions and activity in the regular course of the taxpayer's trade or business". Substantial evidence supports the Commissioner's decision that this income was business income.

*(2) Champion's IRC § 631(a) gain was correctly apportioned as business income.*

■ Section 631(a) [26 U.S.C.A. § 631] of the Internal Revenue Code allows a taxpayer to elect to treat the cutting of timber as a sale or exchange, eligible for taxation at capital gains rates, even though the timber which has been cut has not actually been sold.

On its 1972 federal tax return, Champion reported as a sale or exchange, the fair market value of $950,669 worth of timber cut during 1972, but which remained unsold at the end of that year.

New Mexico does not afford capital gains treatment to taxpayers. Therefore, Champion deducted the fair market value of unsold timber from its business income on its New Mexico tax return because it was not in fact *realized* by timber sales in 1972. The Commissioner disallowed the deduction. We agree.

Champion says:

(a) The cutting of timber which is unsold does not create "income" within any accepted definition of that term.

(b) New Mexico is imposing a tax on an out-of-state activity. This is both unconstitutional and beyond the taxing authority of the State.

We disagree.

(a) *Timber-cutting gain for federal income tax is subject to New Mexico income tax.*

Section 72–15A–3 of the "Income Tax Act" says:

A tax is hereby imposed . . . upon the net income of . . . every foreign corporation . . . engaged in the transaction of business in . . . this state.

Sections 72–15A–2(S) and (T)(2) says:

S. "base income" means that part of the taxpayer's income generally defined as *federal taxable income and upon which the federal income tax is calculated;* and

T. "net income" means base income adjusted to exclude:

\* \* \* \* \* \*

(2) amounts that the state is prohibited from taxing because of the laws or Constitution of this state or the United States . . . . [Emphasis added].

We agree that § 631(a) gain does not fit into ordinary definitions of income. See 85 C.J.S. Taxation § 1096a; 71 Am.Jur. 2d State and Local Taxation § 483. But a state has the power to gauge its income tax by reference to the income on which the taxpayer is required to pay a tax to the United States. The constitutionality of state statutes which refer to the Internal Revenue Code definitions have been upheld by the courts. See, *Garlin v. Murphy,* 51 Misc.2d 477, 273 N.Y.S.2d 374 (1966), aff'd 34 N.Y.2d 921, 359 N.Y.S.2d 552 (1974); *Thorpe v. Mahin,* 43 Ill.2d 36, 250 N.E.2d 633 (1969); 85 C.J.S. Taxation § 1096b; Annot., Constitutionality, construction, and application of provisions of state tax law for conformity with Federal income tax law or administrative and judicial interpretation, 166 A.L.R. 516 (1947), supplemented in 42 A.L.R.2d 797 (1955) and its supplement.

Champion elected to make this § 631(a) gain a part of its federal taxable income for 1972. By use of this gain, its federal income tax was calculated. Under the terms of § 72–15A–2(S), the gain is includable in Champion's base income for New Mexico income tax purposes.

(b) *New Mexico is not taxing an out-of-state activity.*

New Mexico has not specifically taxed the § 631(a) gain. It has included that gain in the apportionable business income of Champion. From this business income, New Mexico can tax a percentage like the other states that are parties to the Multistate Tax Compact.

The tax is not levied on the particular business activity of a taxpayer carried on within the borders of the taxing state. The tax is levied on a percentage of the

taxpayer's business income from *all* its business activity. The purpose of this scheme is to make uniform the tax laws of the participating states.

The Commissioner's decision does not tax out-of-state activity. Neither does the tax statute. The taxation is not beyond the State's taxing authority.

Champion's claim of unconstitutionality based on taxation of out-of-state activity, and its claim that the imposition of the tax is beyond the taxing authority of New Mexico, are both groundless.

(c) *Courts uphold inclusion of unrealized gain within "net income" for state taxation.*

The position we take on state taxation of unrealized gain declared as federal taxable income is upheld by the courts. The unrealized gain can be included in "net income" for state tax purposes. *Garlin v. Murphy*, supra; *Marco Associates, Inc. v. Comptroller of Treasury*, 265 Md. 669, 291 A.2d 489 (1972); *Commonwealth v. Electrolux Corporation*, 362 Pa. 333, 67 A.2d 105 (1949); *Ebling Co. v. Graves*, 259 App.Div. 427, 20 N.Y.S.2d 123, aff'd without opinion, 284 N.Y. 688, 30 N.E.2d 726 (1940).

Affirmed.

It is so ordered.

WOOD, C. J., and LOPEZ, J., specially concur.

WOOD, Chief Judge (specially concurring).

I do not join in Judge Sutin's remarks concerning Champion's presentation at the administrative hearing. I do not join in the references to I.T. Regulation 17(b) because that regulation does not apply to the tax year in question.

One issue in this case is whether income from investments, rentals and sale of logs was business income. Under § 72–15A–17(A), supra, it was business income if it arose in the regular course of Champion's business. I do not agree that "regular course" of business is to be determined by whether the business is "unitary" or "one integral business". Such an approach ignores the wording of the statute. Thus, I do not join in Part A of Judge Sutin's opinion.

My approach to the meaning of "regular course" of "trade or business" differs somewhat from the approach taken by Judge Sutin in Part B of his opinion. The taxpayer's evidence makes it clear that the contested income was acquired in the "regular course" of Champion's activities. I do not understand Champion to contend otherwise. Champion's contention is that the contested income was not acquired in the regular course of *trade or business*.

Champion takes a narrow view of the meaning of trade or business. It would limit the meaning of trade or business to the main course of its business which it asserts is "manufacturing and selling finished products". It contends it is not in the business of investments, of renting property or making occasional sales of logs for use as telephone poles. Support for its view is found in Peters, "The Distinction Between Business Income and Nonbusiness Income", 25 S.Cal.Law Center Tax Institute 251 (1973).

The narrow view urged by Champion is not supported by the *wording* of UDITPA. Statutes are to be given effect as written. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973). Section 72–15A–17(A), supra, makes no reference to "main business" or "main course of business". As I read § 72–15A–17(A), supra, it makes no difference whether the income derives from the main business, the principal business, the occasional business or the subordinate business so long as the income arises from the "regular course" of business.

Peters, supra, at *278* states: "Although one may quibble with the propriety of referring to income realized by a business organization as nonbusiness income, it is utterly ridiculous to assume that its meaning is limited to gifts or other receipts

having no connection with a profit motive." I agree. In *Sperry and Hutchinson Co. v. Department of Revenue,* supra, interest on long-term and short-term securities held for investment were non-business income because the interest did not arise from transactions in the regular course of business. In *Western Natural Gas Company v. McDonald, supra,* income from a liquidation sale of oil and gas leases was nonbusiness income because the sale was not made in the regular course of business. Thus, all income of a business organization is not "business income"; business income must arise from the regular course of business.

Pertinent in determining whether income arises from transactions in the regular course of business is "the nature of the particular transaction" and "former practices" of the business entity. *Western Natural Gas Company v. McDonald,* supra. Also pertinent is how the income is used. *Sperry and Hutchinson Co. v. Department of Revenue,* supra.

Judge Sutin's opinion reviews the evidence. That evidence supports the Commissioner's conclusion that interest income from short-term investments, income from renting surplus property, and income from sale of logs was income arising in the regular course of Champion's business. Thus, I concur in the result reached as to these items.

I join in that part of Judge Sutin's opinion holding the gain on cut but unsold timber was apportionable as business income because that gain was reported as federal taxable income for the year in question.

LOPEZ, Judge (specially concurring).

I agree with Part A of Judge Sutin's opinion and with the conclusion of Part (B)(2)(a) that the § 631(a) gain reported by the taxpayer was properly taxed by New Mexico. I do not agree with the reasoning employed in Part B of Judge Sutin's opinion, nor with the reasoning employed in Chief Judge Wood's concurring opinion. My reasons for preferring the approach of Part A of Judge Sutin's opinion will be outlined below.

It is my belief that UDITPA does not require that all income of a multiform business be included in the business income from which a state takes its apportioned share. The issue might best be presented by the example of a corporation which manufactures and distributes shoes in New Mexico, Texas, and Colorado. In addition to this business, the corporation also makes a sizable profit from office buildings which it owns and operates for rental purposes in New York. One approach New Mexico could take to the rent received would be to ask whether it was customary for the corporation to rent apartments. On finding that it was customary, the rental income would be classified as business income from which New Mexico would take its proportional share. This would appear to be Judge Sutin's approach. Chief Judge Wood looks instead to the "regular course" of the taxpayer's business; since the corporation regularly rents apartments, the same result would be reached. My approach would be to determine whether the business of renting offices in New York is "independent" of the business of selling shoes. Guidance for the meaning of "independent" should be sought in the law which has developed around the unitary business concept. See e.g., *Commonwealth v. ACF Industries, Inc.,* 441 Pa. 129, 271 A.2d 273 (1970) and Keesling & Warren, The Unitary Concept in the Allocation of Income, 12 Hast.L.J. 42 (1960).

I find support for the position I have taken in the Oregon case of *Sperry and Hutchinson v. Department of Revenue,* 527 P.2d 729 (Or.1974). In deciding how interest from investments was to be classified, the court did not dispute that the taxpayer's "customary" and "regular" practice was to make these investments, but rather examined the relationship of these investments to the business that the taxpayer conducted in Oregon.

The proposition that businesses are indivisible, and hence that all income from

them is business income, goes far beyond the position taken by the Bureau in this case, and in its regulations.

For example, at the hearing below, in response to a question from the taxpayer's representative as to what nonbusiness income was, the Bureau's representative stated:

"Well, if you took that money out and invested in yachts for an unrelated purpose or bought property not related to your business of logging or whatever it is and you derived income from it, then it would be non-business income."

More significantly, the Bureau's regulations, and the examples illustrating them, indicate that there comes a point where the Bureau feels corporate activity is divisible. Thus, in discussing when rental income is business income the Bureau uses the following example:

"Example (iv): The Taxpayer operates a multistate chain of grocery stores. It purchases as an investment an office building in another state with surplus funds and leases the entire building to others. The net rental income is not business income of the grocery store trade or business. Therefore, the net rental income is nonbusiness income." I.T. Regulation 17(b)(I).

Finally, constitutional issues of due process come into play when the abolition of the distinction between unitary and multiform businesses is proposed. Those Supreme Court cases which have upheld formulary apportionment have done so on the basis that the business taxed was a unitary business. Rudolph, State Taxation of Interstate Business: The Unitary Business Concept and Affiliated Corporate Groups, 25 Tax L.Rev. 171, 183–84, (1970); see, e. g., *Butler Brothers v. McColgan*, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942). Although I have found no Supreme Court cases stating that the multiform concept must be respected by state taxing authorities (there are state court cases so holding; see, e.g., *Hamilton Management Corporation v. State Tax Commission*, 253 Or. 602,

457 P.2d 486 (1969) ). I think that a serious constitutional problem is presented by the failure to distinguish between that income of a business. originating in the taxing state, and that income which has no real relationship to that state.

Judge Sutin correctly states that we simply cannot tell from the record before us which of the contested items have no connection with New Mexico. Therefore, although my different interpretation of UDITPA may lead to disagreement in future cases, I have no quarrel with the result reached today.