624 P.2d 51

**F. W. WOOLWORTH CO., a New York Corporation, Appellant,**

**v.**

**BUREAU OF REVENUE, STATE OF NEW MEXICO, Appellee.**

**No. 3954.**

Court of Appeals of New Mexico.

Dec. 4, 1979.

John P. Dwyer, Albuquerque, for appellant.

Jeff Bingaman, Atty. Gen., Sarah Bennett, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WALTERS, Judge.

The Taxation and Revenue Department assessed additional corporate income taxes

for taxpayer's fiscal 1976–77 year, and the taxpayer appeals. Woolworth contends that the Department's inclusion in Woolworth's base income of dividends paid to the parent company by foreign subsidiaries and foreign dividend "gross-up" amounts was unauthorized under New Mexico tax statutes. Those amounts, it says, do not constitute taxable business income under § 7–4–2 A, N.M.S.A. 1978, and are not apportionable under the Uniform Division of Income for Tax Purposes Act, "UDITPA" (§ 7–4–1 through 7–4–21, N.M.S.A. 1978).

The resolution of the appeal lies in determining whether either item, gross-up or foreign dividends, is business income. Only if both categories fit the description of "business income" may they be assessed for state tax purposes.

The statutory definition of business income was discussed in *Champion Int'l Corp. v. Bureau of Revenue*, 88 N.M. 411, 540 P.2d 1300 (Ct.App.), *cert. den.*, 89 N.M. 5, 546 P.2d 70 (1975), and recently in *Tipperary Corp. v. New Mexico Bureau of Revenue*, 93 N.M. 22, 595 P.2d 1212 (Ct.App.), *cert. den.*, 92 N.M. 675, 593 P.2d 1078 (1979). Section 7–4–2 A requires a supportable finding, to classify income as "business income," that the income arose (1) from transactions and activity in the regular course of the taxpayer's trade or business, or (2) from situations where the acquisition, management and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

In a special concurrence in *Champion, supra*, Chief Judge Wood said:

> Pertinent in determining whether income arises from transactions in the regular course of business is "the nature of the particular transaction" and "former practices" of the business entity. [Citation omitted.] Also pertinent is how the income is used. [Citation omitted.]

Taxpayer is a corporation having its principal place of business in New York. It receives dividend income from four foreign subsidiaries. "Gross-up" is the term applied to foreign taxes paid by the foreign subsidiaries which under Internal Revenue Code § 78 taxpayer is "deemed" to receive, and is reportable as dividend income if the taxpayer elects to claim a foreign tax credit on its federal return as permitted by Internal Revenue Code § 902.

1. *Inclusion of gross-up as New Mexico business income.*

The State urges that taxpayer must include gross-up in its apportionable New Mexico base income because the state income tax forms prescribed by the Director of the Department of Revenue and Taxation instruct the taxpayer to report "Federal Taxable Income as shown on Federal Form 1120, Line 30 * * *" and because § 7–2–2(S) defines base income as "federal taxable income and upon which the federal income tax is calculated."

Line 30 of the federal tax return is not exclusively determinative of what is federal taxable income. *Getty Oil Company v. Taxation and Revenue Dept.*, 603 P.2d 328 (Ct.App.), 1979. The gross-up figure included as dividend income in the federal return is reported only because the foreign taxes paid from those "deemed" dividends are later allowed to be deducted as a credit in computing taxes payable to the federal government. If the foreign tax credit were not claimed, the gross-up would not be "deemed" income and would not be reportable.

The definition of § 7–2–2(S) contended for by the Department ignores the portion of subsection (S) referring to the amount "upon which the tax is calculated." The calculation of federal tax does not rest solely on the amount shown at Line 30 of Form 1120; it is *calculated* upon that figure *less* certain credits shown at lines 10(a), (b) and (c), and *plus* other amounts shown at lines 13, 14, 15, and 16, all in Schedule "J" of the federal return. The foreign tax credit, which is not reflected in Line 30 is one of the amounts affecting calculation of the federal income tax.

The rigid insistence of the Department which requires the taxpayer to use only the Line 30 figure in reporting New Mexico

income is a refusal to recognize an obviously fictitious income figure, made artificial by the federal reporting requirements for a specific purpose, and denies the taxpayer the right to show the true federal taxable income "no matter where * * * [it] might be found in its consolidated federal return." *Getty, supra.* "That which is not in fact the taxpayer's income cannot be made such by calling it income." *Hoeper v. Tax Commission of Wisconsin,* 284 U.S. 206, 215, 52 S.Ct. 120, 121, 76 L.Ed. 248 (1931).

"Gross-up" in fact represents income to taxpayer's foreign subsidiaries which is paid out in taxes to foreign governments. The record does not support the decision of the Director of the Revenue Division that the foreign subsidiaries use "a part of the taxpayer's dividends to pay taxes on behalf of the parent." The taxes paid are from income of the subsidiaries on behalf of the subsidiaries. "Gross-up" is not in fact dividend income to the taxpayer; ergo, it cannot be classified as "business" income, and it need not be included in taxpayer's New Mexico tax return. Sections 7–4–2 A, D, N.M.S.A. 1978. *See. F. W. Woolworth Co. v. Comm'r of Taxes,* 133 Vt. 93, 328 A.2d 402, 407 (Larrow, J. dissenting).

## 2. *Inclusion of dividends from foreign subsidiaries.*

■ The department also determined that $39,881,161 received by taxpayer in actual cash dividends from its foreign subsidiaries and excluded by the taxpayer from apportionable income subject to New Mexico tax, were derived from "an integral part of the corporation's operations." As such, they were assessed as business income, and a portion of the total amount was allocated as New Mexico's apportionable share for taxpayer's New Mexico operations.

Woolworth contends that its domestic operations constitute a unitary business of which the foreign subsidiaries are no part, and to which the foreign activities contribute nothing in the production of domestic income. Paragraphs 6 through 15 of the Department's Decision and Order support taxpayer's argument that unity of business operation among the domestic parent and the foreign subsidiaries is missing. The Department agrees that taxpayer operates a unitary business in the United States, phrasing the argument on the question of foreign dividends as taxable business income in this fashion:

> The issue is whether the dividend income of a concededly unitary domestic corporation from substantial investment in its foreign subsidiaries is business income to be apportioned along with all other business income of the unitary business.

The Department relies in part on Paragraph 16 of the Director's decision which recites that the dividends are "placed in the general funds of the taxpayer and used for general corporate operating expenses." This reliance goes, of course, to the pertinency of use in determining whether such income was business income. *See Champion,* 88 N.M. at 418, 540 P.2d 1300; *Tipperary, supra,* 595 P.2d at 1218. The evidence does support a finding that the dividends were deposited to taxpayer's general treasury; there is no evidence that the money was used for "general corporate operating expenses." As appellant taxpayer points out, the total cash dividends under discussion amounted to $39,881,161. During the same tax year, Woolworth paid out $39,986,308 in dividends to its United States shareholders. It is more reasonable to regard the dividend income as merely passing through the general treasury to stockholders than to declare, without any evidence in support, that it is used for operating expenses of the corporation.

Turning to the "regular course of business" analysis set out by Judge Wood in the *Champion* special concurrence, we note that the taxpayer's initial and only investment in the English subsidiary was $64,000 in 1911. When the German facilities were demolished during World War II, taxpayer contributed $400,000 to its rebuilding. The Mexican and Canadian corporations are wholly owned subsidiaries. None of them are presently in debt to the parent company, and all of the subsidiaries have grown on their own reinvestments. The dividend

income from the foreign corporations is declared by the taxpayer as income to the parent allocable only to the state of domicile, New York, since the taxpayer contends that it is non-business income. Sections 7–4–2 A, D, N.M.S.A. 1978.

The facts here are close to those of *Sperry & Hutchinson Co. v. Department of Revenue*, 270 Or. 392, 527 P.2d 729 (Or.1974). Like Woolworth, Sperry & Hutchinson (S & H) did business in forty-eight states and was domiciled in New York. Its primary and only business in Oregon was sale of a trading stamp promotional service to retailers. From its revenues, S & H invested in short-term securities held to satisfy its needs for liquid capital in the stamp business; short-term securities held pending acquisition of other companies or favorable development in the long-term money market, and long-term securities held as an investment. The Oregon Supreme Court ruled, under a statute virtually identical to § 7–4–2 A, N.M.S.A. 1978, that only the short-term investments which provided capital needed to meet business obligations during periods of cash flow deficits constituted "business income 'arising from transactions and activity in the regular course of the taxpayer's trade or business' * * *." (527 P.2d at 731.)

The other investments, it said, were "not apportionable to Oregon because neither the capital invested nor the income derived therefrom are a part of the * * * business conducted in this state," and there was no showing that the interest on those investments was held for use in its Oregon business. That is also the state of the record presently before this court. There is no indication that the income from Woolworth's long-standing investments was used either in taxpayer's unitary domestic business. or in its business conducted in New Mexico, *Champion, supra* (Wood, C. J.); *Sperry & Hutchinson v. Bureau of Revenue, supra.* Nor was there evidence (1) that the investments were "[b]usiness deals [or] the performance of a specific function in the normal, typical, customary or accustomed policy or procedure of the taxpayer's trade or business," *Champion, supra* (Sutin, J.);

(2) that the interest arose "from transactions in the regular course of [taxpayer's] business," *Champion, supra* (Wood, C. J.); (3) that there was any "relationship of the income source to the [regular] business activities of the taxpayer," *Tipperary, supra* (Lopez, J.); or (4) that investing in foreign corporations was "an integral part of the regular trade or business operations of taxpayer," *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 88 N.M. 521, 524, 543 P.2d 489 (App.1975).

Accordingly, we reverse the decision and order of the Department insofar as it includes those gross-up and dividend income amounts in taxpayer's 1976–77 taxable income.

IT IS SO ORDERED.

WOOD, C. J., and HERNANDEZ, J., concur.